IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BRYAN BAILES,
Individually and on Behalf of
All Others,

      Plaintiff,

v.

LINEAGE LOGISTICS, LLC,

      Defendant.

Case No. 15-cv-02457-DDC-TJJ

<u>MEMORANDUM AND ORDER</u>

Plaintiff Bryan Bailes brings this lawsuit on behalf of himself and putative class members alleging that defendant, Lineage Logistics, LLC, violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681–81x (2012).  The parties met, negotiated, and have agreed to a compromise.  They now ask the court to approve the result of their efforts:  a proposed class settlement of counts two and three of the Complaint.[1]  *See* Amended Joint Motion for Preliminary Approval of Class Action Settlement (Doc. 24-1).  The parties also ask the court to approve plaintiff's attorneys' fees and costs.  Doc. 24-1 at 13–25.  For reasons explained below, the court denies the motion.

I.      Background

On February 10, 2015, plaintiff filed a complaint alleging that a disclosure and authorization form that defendant gave plaintiff and other job applicants violates the FCRA.  In the Complaint, plaintiff seeks to represent himself as well as anyone who signed the disclosure

---

[1] In the Joint Stipulation of Settlement, plaintiff agrees to drop count one of the Complaint—a class FCRA claim based on adverse action due to a consumer report—if the court preliminarily approves the parties' settlement agreement on counts two and three.  Doc. 24-2 at 3.

form on or after February 5, 2013.  He contends that this form, titled "Disclosure and Authorization Regarding Obtaining Consumer and/or Investigative Reports for Employment," contained extraneous information that violated the FCRA's requirement that any authorization to use a consumer report for employment purposes stand alone.  *See* 15 U.S.C. § 1681b(b)(2)(A) (requiring  a "clear and conspicuous disclosure . . . in writing . . . in a document that consists solely of the disclosure" before procuring a consumer report for employment purposes).  Plaintiff also asserts that defendant's violations were willful, thus entitling him and the putative class members to statutory damages of no less than $100 and no more than $1,000 per violation.  *See* 15 U.S.C. § 1681n.  He also contends that the proposed class is entitled to recover punitive damages, attorneys' fees, and costs.  Defendant ardently denies plaintiff's allegations and contends that, should this case proceed, plaintiff would fail to convince the court to certify the proposed class.

After initial disclosures and written discovery, the parties agreed to mediate their dispute. On September 10, 2015, the parties reached an agreement on a proposed class settlement.  In the proposed settlement, the parties agree to certify the proposed class for settlement purposes only, defendant agrees to pay $149,205 into a fund for the settlement class, and plaintiff agrees to release all claims against defendant, including those asserted on behalf of the class.  Doc. 24-2 at 5, 8.  It is this proposed settlement that the parties ask the court to approve, at least preliminarily.

Approving the parties' proposed settlement is appropriate only if the proposed class is suitable for certification, class counsel is appointed, the settlement terms are "fair, reasonable, and adequate," and the proposed class notice satisfies due process requirements.  Fed. R. Civ. P. 23(e), (a)–(b), (g).  And the court may grant plaintiff's request to approve his attorneys' fees and

costs only if the requested amount is reasonable.  *Gottlieb v. Barry*, 43 F.3d 474, 482 (10th Cir.

1994).  The court considers each of these requirements in parts II through V, below.

## II.      Conditional Class Certification

Class certification is appropriate if, after rigorous analysis, the court finds that the

proposed class satisfies the requirements of Federal Rule of Civil Procedure 23.  *Wal-Mart*

*Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011).  To certify a class seeking damages for a

common injury—as this class does—a plaintiff must show that six requirements are met, four

found in Rule 23(a) and two in Rule 23(b)(3):

> (1) [T]he class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical to the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.
>
> (5) The common questions of law or fact predominate over individualized questions; and
>
> (6) a class action is the superior method for adjudicating the controversy.

Fed. R. Civ. P. 23(a)(1)–(4), (b)(3).  In order, these six requirements are commonly called

numerosity, commonality, typicality, adequacy, predominance, and superiority.

Here, all six requirements are met.  In fact, numerosity, commonality, and typicality are

so easily established that they require little discussion.  Approximately 3,430 people are eligible

to become class members, making joinder impracticable.[2]  The only questions that the proposed

settlement resolves are common to the entire class:  Did defendant's disclosure-authorization

form consist solely of a consumer report disclosure?  Did defendant get proper authorization to

---

[2] Presumably, this number comes from defendant's records.  The parties' submissions never explain the number's source, but the proposed notice references defendant's records.  Doc. 24-3 at 3.

run the reports?  And, were defendant's actions willful?  Because the class definition includes only those persons who have signed the forms since February 3, 2013,[3] answering each question for one class member answers the question for all class members.  *See Dukes*, 564 U.S. at 350 (noting that commonality exists if a class-question "generate[s] common *answers*" (quoting Richard Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009))).  And plaintiff's claims are not only typical of the claims of class members, they are identical to them.

But adequacy, predominance, and superiority require more reflection.  To satisfy the adequacy requirement, plaintiff must qualify as an adequate class representative.  To do this, he must show that he is a member of the class, his interests don't conflict with those of other class members, and that he can prosecute the action vigorously through competent counsel.  *In re Motor Fuel Temperature Sales Practices Litig.*, 271 F.R.D. 263, 282 (D. Kan. 2010).  Here, plaintiff is a member of the class he seeks to represent, no discernible conflicts of interest exist between plaintiff and the putative class members, and no known impediments exist that will prevent plaintiff from prosecuting the litigation.  Plaintiff's counsel has represented several class-action plaintiffs, leaving the court with no concerns about counsel's competency. Adequacy is satisfied.

The predominance requirement is met when the proposed class is "sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  This standard often proves ambiguous and difficult; luckily, this is a case where an easy rule of thumb applies.  If a common issue would lead the class to prevail or fail in unison, that issue predominates and the predominance requirement is satisfied.  *Amgen Inc. v. Conn. Ret.*

---

[3] Whether intentional or not, the parties agreed to a settlement class that includes two days' worth of applicants who were not included in plaintiff's Complaint.  *Compare* Doc. 24-2 at 2, *with* Doc. 1 at 2.

*Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013).  Here, if plaintiff fails to prove that defendant acted willfully, all class members would fail on that issue.  If plaintiff fails to prove that defendant's disclosure-authorization form did not meet the two requirements of 15 U.S.C. § 1681b(b)(A), all class members would fail on those issues.  Predominance is satisfied.

Finally, when considering the requirement of superiority, courts look at four things:

(A)   the class members' interests in individually controlling the prosecution or defense of separate actions;

(B)   the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C)   the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D)   the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)–(D).  Because the parties here ask to certify a settlement class, the fourth consideration—ease of management—need not be considered.  *Amchem*, 521 U.S. at 620. As for the other relevant considerations, this case presents what often is called a negative-value suit:  if class members pursued their claims individually, it would cost each one more to bring a lawsuit than they could possibly recover.  This economic truth creates a disincentive for class members to bring and prosecute separate actions.  No other class member has filed suit against defendant on the same basis, and consolidating the class members' claims in one proceeding before one court is preferable to the alternative—duplicative litigation.  Superiority is satisfied.

Because plaintiff has discharged his burden under Rule 23(a) and (b)(3), the court will certify the following class conditionally for the purposes of settlement only:

all individuals from whom Lineage obtained written consent on or after February 3, 2013, using a form titled Disclosure and Authorization Regarding Obtaining Consumer and/or Investigative Reports for Employment, to obtain a consumer report and upon whom Lineage subsequently obtained a consumer report.

Doc. 24-2 at 2.

### III.    Appointing Class Counsel

When a court certifies a class it also must appoint class counsel who will represent the interests of the class fairly and adequately.  Fed. R. Civ. P. 23(c)(1)(B), (g)(1).  In doing so, a court must consider, at minimum, the following four factors:

(i)   the work counsel has done in identifying or investigating potential claims in the action;

(ii)  counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii) counsel's knowledge of the applicable law; and

(iv)  the resources that counsel will commit to representing the class[.]

Fed. R. Civ. P. 23(g)(1)(A).

Plaintiff asks the court to appoint C. Jason Brown and Jayson Watkins of Brown & Associates LLC as class counsel.  After close review, the court finds that the proposed class counsel satisfy the governing criteria and will represent the interests of the class adequately.  Plaintiff's counsel already has invested several months of work in this case, conducting discovery and engaging in mediation.  Also, counsel is well-versed in FCRA law, having represented clients in several FCRA actions.  *E.g.*, *Miller v. Quest Diagnostics*, 85 F. Supp. 3d 1058 (W.D. Mo. 2015); *Rawlings v. ADS Alliance Data Sys., Inc.*, No. 2:15-cv-04051-NKL, 2015 WL 3866885 (W.D. Mo. June 23, 2015).  Mr. Brown and Mr. Watkins are experienced.  They have handled class actions and served as class counsel for several employment-related actions and similar FCRA actions.  *See, e.g.*, *Alame v. Norred & Assocs., Inc.*, No. 2:13-cv-04280-NKL, ECF No. 78 (W.D. Mo. Aug. 8, 2015) (appointing Brown & Associates LLC as class counsel in a nearly identical FCRA class-action settlement); *Harris v. Pathways Cmty. Behavioral Healthcare, Inc.*, No. 10-0789-CV-W-SOW, 2012 WL 1906444, at *6 (W.D. Mo.

May 25, 2012) (appointing Jason Brown as class counsel in a Fair Labor Standards Act case); *Busler v. Enersys Energy Prods., Inc.*, No. 09-00159-CV-W-FJG, 2009 WL 2998970, at *5 (W.D. Mo. Sept. 16, 2009) (same).  Finally, there is no reason to doubt that counsel will invest the resources necessary to prosecute this case.  The court thus finds that C. Jason Brown and Jayson A. Watkins of Brown & Associates LLC can represent the class fairly and adequately, and it appoints them as counsel for the settlement class.

## IV.    Proposed Settlement Agreement

Any settlement of a certified class action must be approved by a court.  Fed. R. Civ. P. 23(e).  Before approving a settlement, the court must find that it is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  This usually takes place in two phases.  In the first, the court considers whether the proposed settlement is "fair, reasonable, and adequate," and if it is, the court preliminarily approves the settlement and orders the parties to send notice of the settlement to class members, thus allowing class members to object to or opt out of the settlement.  *In re Motor Fuel Temperature Sales Practices Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012).  Then, in phase two, the court entertains any objections, considers whether the settlement is "fair, reasonable, and adequate," and either denies or approves the settlement.  Fed. R. Civ. P. 23.  At the preliminary approval stage, the court's review typically applies a "less stringent" standard to a proposed settlement.  *See In re Motor Fuel*, 286 F.R.D. at 492.  But here, a more searching review is necessary because the parties have negotiated the proposed settlement before the class was certified.  *Id.*

To determine whether a proposed settlement is "fair, reasonable, and adequate," courts consider four factors.  They are: (1) whether the parties judge the settlement to be fair and reasonable; (2) "whether the proposed settlement was fairly and honestly negotiated"; (3)

"whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt"; and (4) "whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation." *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002) (quoting *Gottlieb v. Wiles*, 11 F.3d 1004, 1014 (10th Cir. 1993), *abrogated on other grounds by Devlin v. Scardelletti*, 536 U.S. 1 (2002)).  Before turning to these factors, however, the court provides a brief explanation of the proposed settlement.

## A.     The Proposed Agreement

The parties have agreed to settle counts two and three of plaintiff's Complaint for a total of $149,205.  They propose to distribute this sum as follows:  attorneys' fees and costs of $49,237 (should the court approve the amount); costs of the settlement administrator, expected to be about $18,000; a $5,000 incentive award for Bryan Bailes, the named plaintiff; and then the remaining (estimated) $76,968 will be distributed among the estimated 3,430 class members. The parties have not yet named settlement administrator, but they agree that the administrator will locate correct addresses for class members and, if necessary, run one skip trace to find any missing class members.  Should the court eventually approve the settlement, any checks returned to the yet-unnamed settlement administrator as undeliverable would go to the US Committee for Refugees and Immigrants as a cy pres beneficiary.  And any checks not cashed within 90 days of issuance will revert back to the defendant.

In addition to the monetary considerations detailed above, the parties have agreed not to publicize the settlement and that the plaintiff would file an amended complaint dismissing count one of the Complaint, should the court approve the settlement.  Plaintiff and all class members also have agreed to release any and all claims they may have against the defendant based on counts two and three of the Complaint.

## B.      Analysis

After analyzing all four factors, the court finds that it cannot grant preliminary approval of the proposed settlement.

### 1.      The Parties Judge the Proposed Settlement to Be Fair and Reasonable and the Proposed Settlement Was Fairly and Honestly Negotiated.

The court is satisfied that the parties sincerely believe that the proposed settlement is fair and reasonable, and that the parties reached agreement after fair and honest negotiations.  Before sitting down to negotiate, the parties exchanged initial disclosures and conducted written discovery.  The proposed settlement was reached after a day-long mediation with John Phillips of Husch Blackwell LLP, a respected mediator with experience mediating class-action cases.  Competent counsel represented the parties during mediation and indeed, throughout this litigation.  And, all together, the proposed settlement appears to result from arms'-length negotiation.  Moreover, both parties agree that the settlement is fair, reasonable, and in their best interests.  Doc. 24-2 at 4.  Thus, factors one and four favor preliminary approval.

### 2.      Serious Questions of Law and Fact Exist, Placing the Litigation's Outcome in Some Doubt.

When approving (or declining to approve) a proposed class-action settlement, courts do not decide the case's merits.  *Nat'l Treasury Emps. Union v. United States*, 54 Fed. Cl. 791, 797 (2002).  But, a court cannot truly consider whether serious questions of law or fact exist in a case without assessing the strength of each party's claims.  This assessment necessarily requires some evaluation of the case's underlying merits.  *See id.*  Here, the court finds that serious questions of law and fact exist, creating some doubt about the litigation's ultimate outcome.

What information defendant's disclosure and authorization form included is not, by itself, a difficult question of fact.  But, whether defendant violated the FCRA, and did so willfully, *are*

9

serious and doubt-inducing legal questions.  If defendant violated the FCRA negligently, class

members could recover no more than their actual damages.  15 U.S.C. § 1681o.  But, if

defendant willfully violated the FCRA, class members are statutorily entitled to recover no less

than $100 and no more than $1,000 per violation.  15 U.S.C. § 1681n(a)(1)(A).  Usually, the

question whether a defendant acted willfully is straightforward.  But a split of authority exists

among district courts about what constitutes a willful violation of the FCRA.  *See Lengel v.

HomeAdvisor, Inc.*, 102 F. Supp. 3d 1202, 1211–12 (D. Kan. 2015) (discussing statutory-

interpretation split between district courts).  Some district courts have ruled that a disclosure

form that contains other information—for instance, a liability waiver—does not violate the

FCRA.  *E.g.*, *Smith v. Waverly Partners, LLC*, No. 3:10-cv-00028-RLV-DSC, 2012 WL

3645324, at *6 (W.D.N.C. Aug. 23, 2012); *Burghy v. Dayton Racquet Club, Inc.*, 695 F. Supp.

2d 689, 699 (S.D. Ohio 2010).  In contrast, others have held that it does violate the act.  *E.g.*,

*Lengel*, 102 F. Supp. 3d at 1211–12; *Singleton v. Domino's Pizza, LLC*, No. DKC 11-1823, 2012

WL 245965, at *8–9 (D. Md. Jan. 25, 2012).  So it is unclear whether defendant violated the

FCRA.

      This split of authority generates a second substantial question whether a defendant

willfully can violate the FCRA provisions at issue here without actual knowledge that it is doing

so.  *See Lengel*, 102 F. Supp. 3d at 1211–12 (discussing statutory-interpretation split's effect on

willfulness inquiry).  Because a willful FCRA violation can amount to either intentional or

reckless, *Safeco Ins. Co. of Am. V. Burr*, 551 U.S. 47, 57 (2007), the reasonableness of a

defendant's reading of the statute is a serious question.  *See Syed v. M-I LLC*, No. 1:14-742 WBS

BAM, 2014 WL 4344746, at *2–3 (E.D. Cal. Aug. 28, 2014) (finding the statute ambiguous and

therefore holding that the plaintiff failed to state a claim for willful violation).  If the FCRA's

disclosure-requirements provisions are not clear, a plaintiff will have more difficulty showing that a defendant's interpretation is unreasonable, thereby making it more difficult to prove that a defendant's conduct was reckless, *i.e.*, willful.  In sum, this case's merits present serious questions of law, and those questions warrant some doubt about the litigation's ultimate outcome.  This second factor favors preliminary approval.

        3.      *Under the Proposed Settlement, There Is No Way for the Court to Determine Whether the Value of Immediate Recovery Outweighs the Possibility of Future Relief.*

At first glance, the proposed settlement appears to provide sufficient recovery to outweigh class members' potential for future recovery.  But, on closer inspection the court finds that the proposed settlement agreement's reversion and cy pres provisions as well as its failure to select an administrator make it impossible to determine whether the proposed settlement provides sufficient value to absent class members.

After subtracting the requested attorneys' fees and costs, estimated administration costs, and the named plaintiff's $5,000 incentive award, the estimated 3,430 class members would split approximately $76,968 evenly, so about $22.44 per person.  The best-case scenario for class members entitles them to between $200 and $2,000 per person—representing success on both count two and three of the Complaint.  In the worst-case scenario, they recover nothing.  There is a big difference between $2,000 and $22.44, but taking into account the uncertainty of proving a willful violation and the costs and delays of litigation, even $22.44 starts to look reasonable.  Nevertheless, similar FCRA settlements have produced as much as $250 per claim, and some FCRA settlements have even reached $1,000 per claim.  *Notice of Proposed Class Action Settlement and Hearing* 4 (2015), alameclassaction.com/Portals/0/4694_Alame%20v%20Norred_Web%20LFN_v3.pdf (notice in a

nearly identical FCRA class action represented by plaintiff's counsel, class members recovered $250 each); *Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402, 418 n.8 (E.D. Pa. 2010) (finding recovery from $500 to $1,000 per claim at settlement reasonable in a different type of FCRA class action). Also, successful FCRA plaintiffs can recover costs and attorneys' fees under the statute. 15 U.S.C. §§ 1681n(a)(3), 1681o(a)(2). So the low recovery figure proposed by the parties concerns the court. But what most troubles the court is the uncertainty that class members will recover even $22.44 each.

The proposed settlement agreement has three serious deficiencies that prevent the court from evaluating the sufficiency of class recovery. First, the parties neglected to select a settlement administrator. Although this may appear *de minimis*, it isn't. *Cf. Brown v. Hunt & Henriques, Attorneys at Law*, No. 5:15-cv-01111-EJD, 2015 U.S. Dist. LEXIS 140739, at *3–4 (N.D. Cal. Oct. 15, 2015) (denying approval of a settlement agreement that didn't identify the settlement administrator). If the parties have not selected a settlement administrator, how could they estimate administration costs of $18,000? The proposed agreement does not say.

Second, the proposed agreement provides that all checks not cashed within 90 days of issuance will be cancelled and the funds represented by those checks will revert to the defendant. Although a reversion provision is not prohibited per se, *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 785 (7th Cir. 2004), most courts strongly disfavor them. *E.g.*, *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 172 (3d Cir. 2013) ("Reversion to the defendant risks undermining the deterrent effect of class actions by rewarding defendants for the failure of class members to collect their share of the settlement."); *First Albany Corp. v. Am. Integrity Corp.*, No. C 86-7133 WHA, 2015 U.S. Dist. LEXIS 164559, at *2–3 (E.D. Pa. Dec. 8, 2015) ("This court will not order funds to revert to the defendant . . . ."); *Kakani v. Oracle Corp.*, No. 06-06493, 2007 WL

12

1793774, at *3, *5 (N.D. Cal. June 19, 2007) (denying a reversion clause and stating that it would be a "bonanza for the company . . . [who with] a single stroke, would wipe the slate clean of *all* its wage-and-hour-liabilities"); *see also* John B. Isbister et al., Am. Bar Assoc., *Seven Steps to a Successful Class Action Settlement* (2009),

https://apps.americanbar.org/litigation/committees/classactions/settlement-class-action.html

("Courts disfavor 'reverter' clauses . . . .  [C]lauses [like this] allow counsel to agree to an inflated settlement amount that serves as the basis for calculating attorney fees, and they provide an incentive to discourage members of the class from making claims.").  Reversion provisions prevent the court from knowing the true value of a settlement and, more importantly, create the potential for undermining the rights of absent class members.  *See* Barbara J. Rothstein & Thomas E. Willging, Fed. Judicial Ctr., *Managing Class Action Litigation: A Pocket Guide for Judges* 13 (2005), http://www.fjc.gov/public/pdf.nsf/lookup/classgde.pdf/$file/classgde.pdf (explaining the conflicting incentives created by reversion clauses).

The proposed agreement's release provision in this case binds anyone who falls within the class definition but does not opt out.  This includes class members whose correct address is never found.  So, whether a class member gets an opportunity to cash defendant's check, or not, the class member cannot sue the defendant for the FCRA violations alleged here.  The court has a duty to protect the rights of absent class members.  *See Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 854 (10th Cir. 1993) (describing the district court as the fiduciary of class members); Fed. R. Civ. P. 23(3) advisory committee's note ("[C]ourt review and approval are essential to assure adequate representation of class members who have not participated in shaping the settlement.").  Approving the parties' proposed agreement with the reversion provision simply would not fulfill this duty.  How much of the $76,968 will actually go to class

members?  No one knows.  So, with an unknown amount of money reverting back to the defendant, the court cannot evaluate whether the proposed settlement provides adequate value to the class.

This conclusion does not mean that a reversion provision is never permissible.  It is possible that such a provision might pass muster.  Of the four options for disposal of unclaimed-settlement funds, [4] however, reversion is the least favored, followed closely by cy pres.  *See In re Baby Prods.*, 708 F.3d at 172 (discussing reversion as least desirable option); *In re BankAmerica*, 775 F.3d at 1064 (noting that cy pres is only permissible if the cost of an additional distribution to the class is prohibitive or class members have fully recovered).

Third, the court finds that the cy pres beneficiary chosen by the parties is so unrelated to the claims in this case that the court cannot find that class members will benefit from the cy pres provision.  Approving a cy pres beneficiary is appropriate only if the beneficiary is "the next best use . . . for indirect class benefit," and the beneficiary is related to the case's underlying claims. *In re BankAmerica Corp. Sec. Litig.*, 775 F.3d 1060, 1067 (8th Cir. 2015) (quoting *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 196 (5th Cir. 2010)); *In re Motor Fuel*, 286 F.R.D. at 504. A cy pres beneficiary must be related to the nature of a plaintiff's claims because if it is "not tethered to the nature of the lawsuit and the interests of silent class members, the selection process may answer to the whims and self-interests of the parties, counsel or the [c]ourt." *In re Motor Fuel*, 286 F.R.D. at 504 (citing *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1039 (9th Cir. 2011)).  Here, the proposed settlement agreement requires the administrator to distribute all undeliverable checks to a cy pres beneficiary—the US Committee for Refugees and Immigrants. Though this committee may serve admirable goals, the parties never explain how it relates to fair

---

[4] Those four options are an additional distribution to the class, *In re BankAmerica*, 775 F.3d at 1064, reversion to the defendant, escheat to the state, or cy pres, *In re Baby Prods.*, 708 F.3d at 172.

credit reporting.  This keeps the court from finding that the cy pres distributions under the proposed agreement would benefit the class, thus making an accurate valuation of the proposed settlement agreement impossible.

Because the parties have failed to select a settlement administrator, have included a reversion provision, and have selected an inappropriate cy pres beneficiary, the court cannot find that the value of the settlement outweighs potential future recovery.  Factor three weighs against preliminary approval.  Indeed, these deficiencies are substantial enough that the court cannot, in its role as protector of absent class members, approve the proposed settlement.  Even though three of the four factors favor preliminary approval, the due process concerns inherent in the deficiencies noted under factor three are overwhelming.  The court concludes that it cannot approve the proposed settlement and denies the parties' Amended Joint Motion for Preliminary Approval of Class Action Settlement without prejudice to future consideration.

This ruling does not mean that the court condemns the parties' efforts.  To the contrary, the court commends what the parties have accomplished so far and encourages them to look for solutions to the noted deficiencies.  On the premise that the parties may return to negotiations, the court takes this time to identify a few problems with their proposed notice.

### V.    Proposed Notice

When a court preliminarily approves a class-action settlement, it must direct notice to class members.  Fed. R. Civ. P. 23(e)(1).  The parties' proposed notice must be the best notice practicable under the circumstances and must comport with due process.  Fed. R. Civ. P. 23(c)(2)(B); *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 943–44 (10th Cir. 2005).  Because the court has denied preliminary approval, its analysis of the parties'

proposed notice is somewhat limited and only intended to direct the parties' attention to several existing deficiencies.

First, the class definition in the parties' proposed settlement agreement is different than the class definition used by the proposed notice.  The proposed notice limits the class to those who signed defendant's forms between February 3, 2013 and March 26, 2015.  Doc. 24-3 at 1, 3. The proposed settlement agreement defines the class as all those who signed the forms "on or after" February 3, 2013.  Doc. 24-2 at 2.

Second, the proposed notice does not inform class members that they have but 90 days to cash their settlement checks.  The notice also does not tell them that, should they fail to cash their checks within that time, the money will revert back to the defendant.  Without letting class members know about this provision, they cannot decide whether to object to the settlement.  *Cf. Brown*, 2015 U.S. Dist. LEXIS 140739, at *4 (denying approval and noting that failing to include the 90-day period in the class notice was problematic).  Should the parties renegotiate and propose to keep the reversion provision they must, at a minimum, disclose this provision.

Finally, the proposed notice informs class members that they are likely to receive $23.31 under the proposed settlement agreement.  This does not square with the figures provided by in the proposed agreement.  As discussed above, the parties' proposed agreement requires funds to be distributed to class counsel, the administrator, and plaintiff's incentive award before any funds are available for class members.  Thus, class members stand to recover $22.44 per class member under the proposed agreement—not $23.31 as the proposed notice asserts.[5]

---

[5] *See supra* Part IV.A, B.3.  $149,205 total settlement funds – ($49,237 attorneys' fees and costs + $18,000 estimated administration costs + $5,000 incentive award) = $76,968 available to the class.  $76,968 ÷ 3,430 class members ≈ $22.44 per class member.

VI.    **Request for Attorneys' Fees and Costs**

Because plaintiff has failed to show that the proposed settlement award is fair, reasonable, and adequate, his request for attorneys' fees and costs is premature.  The court notes, however, that the parties agreed to draw the attorneys' fees and costs from the settlement's common fund.  Doc. 24-2 at 5.  "When a settlement agreement is reached and defendant agrees to not oppose an award of attorneys' fees from a common fund, defendant has no incentive to bargain for lower fees."  *Barbosa v. Nat'l Beef Packing Co.*, No. 12-2311, 2014 WL 5099423, at *9 (D. Kan. Oct. 10, 2014).  In those circumstances, our court "skeptically examine[s] and analyze[s] the fee and cost proposal."  *Id.* (footnote omitted).  If the parties decide to reformulate and resubmit their proposed settlement, the court will apply this level of scrutiny to any request for attorneys' fees and costs.

VII.    **Conclusion**

For the reasons stated in this memorandum and order, the court declines to approve the Amended Joint Motion for Preliminary Approval of Class Action Settlement.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's Amended Joint Motion for Preliminary Approval of Class Action Settlement (Doc. 24) is denied without prejudice to future submissions.

**IT IS FURTHER ORDERED BY THE COURT THAT** plaintiff's Joint Motion for Preliminary Approval of Class Action Settlement (Doc. 23) is denied as moot.

**IT IS FURTHER ORDERED BY THE COURT THAT** the parties must notify this court on or before October 19, 2016 of their intention either to (1) file a revised settlement agreement and supporting documentation in accordance with this Memorandum and Order; or (2) abandon settlement and proceed to litigate this dispute.

**IT IS SO ORDERED.**

**Dated this 19th day of August, 2016, at Topeka, Kansas.**

                                        **s/ Daniel D. Crabtree**
                                        **Daniel D. Crabtree**
                                        **United States District Judge**