IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BRYAN BAILES,
Individually and on Behalf of
All Others,

      Plaintiff,

v.

LINEAGE LOGISTICS, LLC,

      Defendant.

Case No. 15-cv-02457-DDC-TJJ

## MEMORANDUM AND ORDER

Plaintiff Bryan Bailes brings this lawsuit on behalf of himself and putative class members alleging that defendant, Lineage Logistics, LLC, violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681–81x (2012).  The parties met, negotiated, and agreed to a compromise.  On May 9, 2016, they asked the court to approve the result of their efforts:  a proposed class settlement.  Doc. 24-1.  On August 19, 2016, the court denied their motion and gave the parties time to renegotiate.  Doc. 25.  The parties met, negotiated, and report that they have agreed to a new proposed class settlement.

In their joint Motion for Preliminary Approval of Class Action Settlement (Doc. 28), the parties now ask the court to do six things:  (1) conditionally certify a settlement class; (2) preliminarily approve their new proposed class settlement; (3) designate Bryan Bailes as the class representative and appoint his attorneys as class counsel; (4) approve the form and manner of class notice; (5) set a date for a final fairness hearing; and (6) preliminarily enjoin "all members of the [s]ettlement [c]lass from commencing, prosecuting, or maintaining any claim which has been or may have been asserted in, or encompassed by," this case.  Doc. 28; Doc. 28-1

1

at 1.  In the memorandum supporting their motion, the parties also ask the court to approve plaintiff's attorneys' fees and costs.  Doc. 28-1 at 16.  For reasons explained below, the court grants the parties' motion in part and denies it in part.

## I.      Background

On February 10, 2015, plaintiff filed a Complaint alleging that a disclosure and authorization form that defendant gave him and other job applicants violated the FCRA. Plaintiff moved to amend his complaint on November 1, 2016, dropping an adverse-action claim, and the court granted his motion on November 16, 2016.  Docs. 27, 29.

In his First Amended Complaint, plaintiff seeks to represent himself as well as anyone who signed defendant's disclosure form on or after February 5, 2013.[1]  He contends that this form, titled "Disclosure and Authorization Regarding Obtaining Consumer and/or Investigative Reports for Employment," contained extraneous information violating the FCRA's requirement that any authorization to use a consumer report for employment purposes stand alone.  *See* 15 U.S.C. § 1681b(b)(2)(A) (requiring  a "clear and conspicuous disclosure . . . in writing . . . in a document that consists solely of the disclosure" before procuring a consumer report for employment purposes).  Plaintiff also asserts that defendant's violations were willful, thus entitling him and the putative class members to recover statutory damages of no less than $100 and no more than $1,000 per violation.  *See* 15 U.S.C. § 1681n.  He also contends that the proposed class is entitled to recover punitive damages, attorneys' fees, and costs.  Defendant denies plaintiff's allegations and contends that, should this case proceed, plaintiff would fail to convince the court to certify the proposed class.

---

[1] In paragraph 8 of his First Amended Complaint, plaintiff alleges, "Plaintiff asserts a pair of FCRA claims . . . consisting of all employees or prospective employees . . . who were subject to a consumer report that was used by the Defendant on or after February 3, 2013."  But in paragraph 34, he seeks to represent a class of people who signed defendant's form "on or after February 5, 2013."  Doc. 30 at 2, 5.  Because the proposed settlement speaks of February 5, 2013, as the operative start-date for the class period, the court uses that date in its factual narrative.

After initial disclosures and written discovery, the parties agreed to mediate their dispute. On September 10, 2015, the parties reached an agreement on a proposed class settlement.  The parties then asked the court to approve this settlement, at least preliminarily.  On August 19, 2016, the court denied this request in part.  Doc. 25.  In its August 19 order, the court conditionally certified the parties' proposed class and appointed plaintiff's counsel as class counsel, but denied their request to approve the settlement.  The court denied their request because, in brief, the proposed settlement did not provide sufficient value to absent class members because the parties' agreement included a reversion clause—allowing unclaimed funds to return to defendant—and also selected an inappropriate cy pres beneficiary, among other things.

On October 19, 2016, the parties informed the court that they had reached agreement on a new proposed class settlement.  Doc. 26.  In this new agreement ("Proposed Settlement"), defendant agrees to pay a total settlement amount of $149,205 in exchange for a release of the class's claims.  Doc. 28-3 at 5.  The Proposed Settlement includes a class definition that differs from the one certified by the court in its August 19, 2016 order.  Doc. 25 at 5; Doc. 28-3 at 2. So, the court must begin its analysis of the Proposed Settlement anew.

Approving the parties' Proposed Settlement is appropriate where the proposed class is suitable for certification, class counsel is suitable, the settlement terms are "fair, reasonable, and adequate," and the proposed class notice satisfies due process requirements.  Fed. R. Civ. P. 23(e), (a)–(b), (g).  And the court may grant plaintiff's request to approve his attorneys' fees and costs only if the requested amount is reasonable.  *Gottlieb v. Barry*, 43 F.3d 474, 482 (10th Cir. 1994).  The court considers each requirement in parts II through V, below, and in part VI considers the parties' request for a preliminary injunction.

3

## II.       Conditional Class Certification and Appointing Class Counsel

### A.       Conditional Class Certification

Class certification is appropriate if, after rigorous analysis, the court finds that the proposed class satisfies the requirements of Federal Rule of Civil Procedure 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011). To certify a class seeking damages for a common injury—as this proposed class does—a plaintiff must meet six requirements. Four are found in Rule 23(a) and two come from Rule 23(b)(3). Namely, the court must find that:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical to the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)–(4). And, to satisfy Rule 23(b)(3), the court must also find that: (1) the common questions of law or fact predominate over individualized questions; and (2) a class action is the superior method for adjudicating the controversy. In order, these six requirements are called numerosity, commonality, typicality, adequacy, predominance, and superiority.

Here, the court is persuaded that all six requirements are met. In fact, numerosity, commonality, and typicality are so easily established that they require little discussion. Based on defendant's records, approximately 3,400 people are eligible to become class members, making joinder impracticable. Doc. 28-1 at 12. Also, the only questions that the Proposed Settlement resolves are common to the entire class: Did defendant's disclosure-authorization form consist solely of a consumer report disclosure? Did defendant get proper authorization to run the reports? And, were defendant's actions willful? Because the class definition includes only those

4

persons who signed the form between February 5, 2013 and March 26, 2015, answering each question for one class member answers the question for all class members. *See Dukes*, 564 U.S. at 350 (noting that commonality exists if a class-question "generate[s] common *answers*" (quoting Richard Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009))). And, plaintiff's claims not only are typical of class members' claims, they are identical to them.

But adequacy, predominance, and superiority require more reflection. To satisfy the adequacy requirement, plaintiff must qualify as an adequate class representative. To meet this mark, he must show that he is a member of the class, his interests don't conflict with those of other class members, and that he can prosecute the action vigorously through competent counsel. *In re Motor Fuel Temperature Sales Practices Litig.*, 271 F.R.D. 263, 282 (D. Kan. 2010). Here, plaintiff is a member of the class he seeks to represent and no discernible conflicts of interest exist between plaintiff and the potential class members. Also, the record reveals no known impediments to prevent plaintiff from prosecuting the litigation. Plaintiff's counsel has represented several class-action plaintiffs, leaving the court with no concerns about counsel's competency. Adequacy is satisfied.

The predominance requirement is met when the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). This standard often proves ambiguous and difficult; luckily, this is a case where an easy rule of thumb applies. If a common issue would lead the class to prevail or fail in unison, that one issue predominates and the predominance requirement is satisfied. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 133 S. Ct. 1184, 1191 (2013). Here, if plaintiff fails to prove that defendant acted willfully, all class members will fail on that issue. If plaintiff fails to prove that

defendant's disclosure-authorization form did not meet the two requirements of 15 U.S.C. § 1681b(b)(A), all class members would fail on those issues.  Predominance is satisfied.

Finally, when considering the requirement of superiority, courts consider four things:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)–(D).  Because the parties here ask to certify a settlement class, the court need not consider the fourth consideration—ease of management.  *Amchem*, 521 U.S. at 620.  As for the other relevant considerations, this case presents what often is termed a negative-value suit:  that is, if class members pursued their claims individually, it would cost each one more to bring a lawsuit than they possibly could recover.  This economic truth creates a disincentive for class members to bring and prosecute separate actions.  The court can find no evidence that other class members have filed suit against defendant on this case's theory, and consolidating the class members' claims in one case before one court is preferable to the alternative—duplicative litigation.  Superiority is satisfied.

Because plaintiff has discharged his burden under Rule 23(a) and (b)(3), the court will certify the following class, conditionally, for settlement purposes only:

all individuals from whom, Lineage obtained written consent between February 5, 2013 and March 26, 2015, using a form titled Disclosure and Authorization Regarding Obtaining Consumer and/or Investigative Reports for Employment, to conduct a background check and upon whom Lineage subsequently obtained a background check.

Doc. 28-3 at 2.

### B.   Appointing Class Counsel

In its August 19, 2016 order the court appointed plaintiff's attorneys, C. Jason Brown and Jayson Watkins of Brown & Watkins LLC, as class counsel.  Doc. 25 at 6–7.  Nothing has changed to alter the court's determination that C. Jason Brown and Jayson Watkins are competent to represent the class's interests fairly and adequately.  The court thus appoints Mr. Brown and Mr. Watkins of Brown & Watkins LLC as class counsel for the newly, and conditionally, certified settlement class.

### III.   Proposed Settlement Agreement

Class action settlements require court approval.  Fed. R. Civ. P. 23(e).  Before approving a settlement, the court must find that it is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  This usually takes place in two phases.  In the first, the court considers whether the proposed settlement is "fair, reasonable, and adequate," and if it is, the court preliminarily approves the settlement and orders the parties to send notice of the settlement to class members. *In re Motor Fuel Temperature Sales Practices Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012).  This process allows class members to object to or opt out of the settlement.  Then, in the second phase, the court entertains any objections, considers whether the settlement is "fair, reasonable, and adequate," and either denies or approves the settlement.  Fed. R. Civ. P. 23.  At the preliminary approval stage, the court typically applies a "less stringent" standard to its review of a proposed settlement.  *See In re Motor Fuel*, 286 F.R.D. at 492.  But, a more searching review is necessary here because the parties negotiated the Proposed Settlement before the class was certified.  *Id.*

To determine whether a proposed settlement is "fair, reasonable, and adequate," courts consider four factors.  They are: (1) whether the parties judge the settlement as a fair and reasonable one; (2) "whether the proposed settlement was fairly and honestly negotiated"; (3)

"whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt"; and (4) "whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation." *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002) (quoting *Gottlieb v. Wiles*, 11 F.3d 1004, 1014 (10th Cir. 1993), *abrogated on other grounds by Devlin v. Scardelletti*, 536 U.S. 1 (2002)). After providing a brief explanation of the Proposed Settlement, the court applies each of these factors to the Proposed Settlement.

### A.    The Proposed Settlement

The parties have agreed to settle the class's claims for a total of $149,205. They propose to distribute this sum in this fashion: attorneys' fees and costs of $49,237 (should the court approve the amount); costs of the settlement administrator, expected to come in around $16,500; a $5,000 incentive award for Bryan Bailes, the named plaintiff; and then the remainder, estimated at $78,468, to be distributed among the estimated 3,400 class members. Docs. 28-3 at 5–6; 28-1 at 12. The settlement administrator, Analytics Consulting, LLC, will locate correct addresses for class members and, if necessary, run a skip trace to find any missing class members. Should the court eventually approve the settlement, the administrator would mail settlement checks to all class members "to whom notice was sent and not returned as undeliverable." Any checks not cashed within 120 days of issuance will pass to Goodwill Industries International, Inc. as a cy pres beneficiary.

In addition to the monetary considerations detailed above, the parties have agreed not to publicize the settlement. Plaintiff and all class members also have agreed to release all claims they may have against the defendant based on plaintiff's First Amended Complaint.

### B.    Analysis

After analyzing all four factors, the court concludes that preliminary approval of the Proposed Settlement is warranted.  In its August 19, 2016 order, the court concluded that the parties' original proposed settlement satisfied three of the four factors needed for approval.  The parties reported that they judged the settlement fair and reasonable, that it was fairly and honestly negotiated, and serious questions of law and fact existed thus placing the litigation's outcome in some doubt.  Doc. 25 at 9–11.  Nothing has changed to alter the court's conclusion on these three factors.  The parties report a shared belief that the Proposed Settlement is fair and reasonable.  Doc. 28-3 at 5.  Also, the parties now have negotiated a settlement of this case twice.  And, there's been no resolution of the questions of law identified in this court's August 19, 2016 order.  So, the only question that remains is whether the Proposed Settlement provides sufficient value to absent class members.  The court concludes that it does.

Before discussing the Proposed Settlement's monetary terms, the court commends the parties' efforts to address the three value-related deficiencies that concerned the court about their original settlement agreement:  failing to name a settlement administrator, including a reversion provision, and selecting a cy pres beneficiary unrelated to plaintiff's claims.  The Proposed Settlement obviates all three concerns.

That cy pres beneficiary is Goodwill Industries International, Inc.  The parties selected this beneficiary because it operates a job-skills training program and provides employability counseling services.  Considering that plaintiff's claims arise out of an employment-related matter, the court finds that Goodwill Industries International, Inc. is a suitable cy pres beneficiary.  *See In re Motor Fuel*, 286 F.R.D. at 504 (explaining that a cy pres beneficiary must relate to the nature of a plaintiff's claims).  The court now turns to consider the Proposed Settlement's monetary terms.

9

After subtracting the requested attorneys' fees and costs, estimated administration costs, and the named plaintiff's $5,000 incentive award, the estimated 3,400 class members would split approximately $78,468 evenly.  This is about $23.08 per person.  The best-case scenario after a trial on the merits would entitle class members—assuming they prevailed on liability on both claims asserted—to an award between $200 and $2,000 per person.  In the worst-case scenario, the class members would recover nothing.  The court is mindful that there is a big difference between $2,000 and $23.08.  But, taking into account the uncertainty of proving a willful violation and the costs and delays of litigation, even $23.08 begins to look reasonable.  Indeed, other federal district courts have approved settlements, at least preliminarily, in FCRA class-action cases for amounts ranging between $14 and $34 per class member.  *E.g.*, Order, *Rawlings v. HRB Deployment & Support LLC*, No. 4:14-cv-00361-BCW (W.D. Mo. Feb. 9, 2015), ECF No. 40 (approving, preliminarily, settlement of approximately $14.82 per class member); Order Granting Preliminary Approval of Class Settlement, *Speer v. Whole Foods Mkt. Grp., Inc.*, No. 8:14-cv-03035-RAL-RBM (M.D. Fla. Sept. 16, 2015), ECF No. 58 (approving settlement of approximately $23.08 per class member); Order, *Johnson v. Casey's Mktg. Co.*, No. 6:15-cv-3086-MDH (W.D. Mo. Dec. 2, 2015), ECF No. 66 (approving, preliminarily, settlement of approximately $34.95 per class member).  On the other side of the equation, the court also realizes that other similar class-action cases have settled for as much as $250 per claim.  *E.g.*, *Notice of Proposed Class Action Settlement and Hearing* 4 (2015), alameclassaction.com/Portals/0/4694_Alame%20v%20Norred_Web%20LFN_v3.pdf (notice in a nearly identical FCRA class action where class members recovered $250 each).  Also, the FCRA allows successful plaintiffs to recover costs and attorneys' fees under the statute.  15 U.S.C. §§ 1681n(a)(3), 1681o(a)(2).  In sum, the settlement that the parties' propose grants class members less than some similar settlements have produced, grants them more than others have produced,

and closely comports with the value of other settlements.  Here, as often is true, determining the sufficiency of a settlement is more art than science.  The outcome of the question requires a judgment about the relative worth of a sure thing with the unknown value of an outcome that might emerge in the future.

Mindful of these vagaries, the court decides that the $23.08 per class member predicted by the Proposed Settlement provides adequate value for this stage of the litigation.  The court thus turns to the notice proposed by the parties.

### IV.    Proposed Notice

When a court preliminarily approves a class-action settlement, it must direct notice to class members.  Fed. R. Civ. P. 23(e)(1).  The proposed notice must provide the best notice practicable under the circumstances and must comport with due process.  Fed. R. Civ. P. 23(c)(2)(B); *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 943–44 (10th Cir. 2005).  To comport with due process, the notice must include "individual notice to all members who can be identified through reasonable effort."  *Id.* at 944 (quoting *In re Integra Realty Res., Inc.*, 262 F.3d 1089, 1110 (10th Cir. 2001)); *see also Better v. YRC Worldwide, Inc.*, No. 11-2072-KHV, 2015 WL 566962, at *3 (D. Kan. Feb. 11, 2015) ("Individual notice to identifiable class members is not a discretionary consideration that can be waived in a particular case; rather, it is 'an unambiguous requirement of Rule 23.'"  (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974))).

Under the settlement proposed here, the settlement administrator will mail the proposed notice to each potential class member directly.  Doc. 28-3 at 7.  The proposed notice (Doc. 28-2) contains all the information required by Rule 23(c)(2)(B).  It describes the nature of the action; the definition of the class certified; the class claims; each class member's right to enter an appearance through the class member's own attorney; each class member's right to opt out of the

settlement; the time and manner for requesting to opt out; and the binding effect a judgment will have on class members.  The proposed notice also identifies the amount plaintiff's counsel will seek as an award of attorneys' fees and costs; the amount of plaintiff's requested incentive award; the date of the final approval hearing; and how to acquire more information about the case, settlement agreement, or approval process.

Again, the court commends the parties for addressing its earlier concerns:  the new proposed notice informs class members that failing to cash their settlement checks within 120 days will cause the check's amount to revert to Goodwill Industries International, Inc.—the cy pres beneficiary.  But the proposed notice contains three errors that the parties must address before the court can approve the notice.

First, the proposed notice reports that there are 3,430 potential class members and that each of those class members is likely to receive $22 under the proposed settlement.  Doc. 28-2 at 3.  In contrast, the parties' Motion reports that there are only 3,400 potential class members, and so each class member is likely to receive $23.08.[2]  *See* Doc. 28-1 at 12 ("Based on information contained in [d]efendant's records, there are approximately 3,400" potential class members).  Second, the settlement administrator's name and address is omitted from the box meant to include that information at the bottom of the fourth page of the proposed notice.  Doc. 28-2 at 4.  And third, the proposed notice's class definition appears to be incorrect.  It states:

> You are receiving this notice because records show that you authorized Lineage to conduct a background check on you by signing a form titled "Disclosure and Authorization Regarding Obtaining Consumer and/or Investigative Reports from Employment," between February 5, 2013 and March 26, 2015 in connection with your application or employment at *Millard Refrigerated Services, LLC*.

---

[2] *See supra* Part III.  $149,205 total settlement funds – ($49,237 attorneys' fees and costs + $16,500 estimated administration costs + $5,000 incentive award) = $78,468 available to the class.  $78,468 ÷ 3,400 class members ≈ $23.08 per class member.

Doc. 28-2 at 3 (emphasis added).  Perhaps defendant, Lineage Logistics, LLC, has acquired

Millard Refrigerated Services, LLC at some time relevant to this case.  But no filing in this case

explains the relationship between Lineage and Millard.  And though the Proposed Settlement

mentions Millard Refrigerated Services in its definition of "defendant," the certified class only

references "Lineage."  Doc. 28-3 at 2; *supra* Part II.  Because the certified class definition and

the rest of the proposed notice speaks of "Lineage Logistics, LLC," the notice must explain why

the notice also mentions "Millard Refrigerated Services, LLC" to fend off confusion among the

class members.  Are those receiving the proposed notice members of the class only if they

applied to Lineage Logistics, LLC?  Only if they applied to Millard Refrigerated Services, LLC?

Or, either one, so long as they applied within the applicable timeframe?

These three sources of confusion preclude the court from finally approving the proposed

notice.  Because a revised notice could cure these problems, the court grants the parties 15 days

to make the clarifications noted above and to resubmit their proposed notice for approval.

## V.   Attorneys' Fees and Costs

Next, plaintiff asks the court to approve attorneys' fees of 33% of the total settlement

payment, or $49,237.  "An award of attorneys' fees is a matter uniquely within the discretion of

the trial judge," but the "fee the trial court established must be reasonable."  *Brown v. Phillips*

*Petroleum Co.*, 838 F.2d 451, 453 (10th Cir. 1988).  When a common fund is created by

settlement—as it is here—courts apply "one of two methods to determine reasonable attorneys'

fee awards:  a percentage of the fund or the lodestar method."  *Barbosa v. Nat'l Beef Packing*

*Co., LLC*, No. 12-2311-KHV, 2015 WL 4920292, at *7 (D. Kan. Aug. 18, 2015) (citing

*Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 (10th Cir. 1995)).  "The Tenth Circuit applies a

hybrid approach, which combines the percentage fee method with the specific factors

traditionally used to calculate the lodestar."  *Id.* (citing *Gottlieb*, 43 F.3d at 483).  In applying the

13

hybrid approach, these two methods complement each other:  in a common fund case, the Tenth
Circuit favors the percentage-of-the-fund method, *Gottlieb*, 43 F.3d at 483, but courts "have
discretion to reduce an award of attorneys' fees" if it would be "unreasonable under the lodestar
approach," *Barbosa*, 2015 WL 4920292 at *7 (citations omitted).  "In all cases, the [c]ourt must
consider the factors listed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.
1974)," called the 12 *Johnson* factors.  *Barbosa*, 2015 WL 4920292 at *7 (first citing
*Rosenbaum*, 64 F.3d at 1445; then citing *Ramos v. Lamm*, 713 F.2d 546, 552 (10th Cir. 1983),
*overruled on other grounds by Pennsylvania v. Del Valley Citizens' Council For Clean Air*, 483
U.S. 711, 725 (1987)).

　　　An award of 33% of the total settlement amount as attorneys' fees and costs is within the
range of possible approval,[3] but the court cannot approve that amount at this time.  The record
before the court is insufficient to determine whether the requested attorneys' fees and expenses
are reasonable under the hybrid approach.  For instance, the court cannot evaluate the first
*Johnson* factor properly:  time and labor required.  In their Motion, the parties provide no
information about the time spent on the case beyond stating that "[p]laintiff's [c]ounsel has
invested a substantial amount of time in this matter."  Doc. 28-1 at 29.  Moreover, the parties
provide no information about a reasonable hourly rate for each attorney,[4] precluding a cross-
check review under the lodestar method.  *E.g.*, *Tommey v. Computer Scis. Corp.*, No. 11-CV-
02214-EFM, 2015 WL 1623025, at *3 (D. Kan. Apr. 13, 2015) (stating that the court could not
determine whether an attorneys' fee award was reasonable because "the parties have not

---

[3] *See, e.g.*, Order Approving Settlement Agreement, *Barnwell v. Corrs. Corp. of Am.*, No. 08-2151-JWL-DJW (D. Kan. Feb. 12, 2009), ECF No. 230 (approving award of 33% of gross settlement amount).

[4] The parties' Motion did not explicitly state a reasonable hourly rate, instead they provided the court with a "collective time-fee value (i.e., lodestar)" amount of "approximately $60,555." Doc. 28-1 at 21 (footnote omitted). Without knowing the number of hours used for this approximation, however, the court cannot determine the hourly rate that plaintiff's counsel is claiming.

14

provided any information [about] time spent or a reasonable hourly rate for each attorney"). So, the court declines to decide, finally, at least the reasonableness of the proposed attorneys' fees at this time. Instead, the court will address and resolve this issue at the final approval hearing, should one occur.

## VI.    Preliminary Injunction

Finally, the parties ask the court to enjoin all settlement class members from pursuing a case related to the claims at issue here. This request is, at best, premature.

Until potential class members can decide whether they wish to exercise their right to opt out of the proposed settlement, an injunction is improper. Potential class members who opt out of the proposed settlement are free "to pursue individual litigation" and so "cannot be enjoined . . . even if they would be relitigating many of the same matters." 7B Arthur R. Miller et al., *Federal Rules of Civil Procedure* § 1798.1 (3d ed. 2005), Westlaw (database updated Apr. 2016) (footnote omitted). The court thus must deny the parties' request for an injunction unless presented with a compelling argument supporting a contrary result. The parties provide no reason why the court should grant their request.

The court thus denies the parties' request for an injunction.

## VII.    Conclusion

The court grants the parties' joint Motion in part and denies it in part. The court grants the parties' request to certify a settlement class, conditionally; to appoint Bryan Bailes as class representative and his attorneys as class counsel; and to approve, preliminarily, the proposed settlement. The court denies the parties' request for an injunction and declines to approve the proposed notice, as submitted. But, the court grants the parties 15 days to address the concerns about the proposed notice expressed in this Order and resubmit it for approval. If the parties

15

address the court's concerns about the proposed notice, the court will then finally decide the parties' request to issue notice and set a final fairness hearing.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the parties' Joint Motion for Preliminary Approval of Class Action Settlement (Doc. 28) is granted in part.  The court grants the parties' request to certify the proposed settlement class and finds the proposed settlement to be fair, reasonable, and adequate at this stage in the litigation.  And the court appoints C. Jason Brown and Jayson A. Watkins of Brown & Watkins LLC as class counsel.

**IT IS FURTHER ORDERED BY THE COURT THAT** the parties' Joint Motion for Preliminary Approval of Class Action Settlement (Doc. 28) is denied in part.  The court denies the parties' request for an injunction and declines to issue notice in this case until the parties correct the three errors identified in part V of this Order.  The court grants the parties 15 days from the date of this Order to submit a corrected proposed notice.  Upon receipt of a corrected proposed notice that addresses the court's concerns, the court will consider the parties' request to issue notice in this case and set a date and time for the final fairness hearing.  If the parties do not intend to submit a corrected notice, they must contact the court no later than 15 days after the date of this Order to advise of this decision and proceed with litigating the case.

**IT IS SO ORDERED.**

**Dated this 15th day of December, 2016, at Topeka, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**