# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS AT KANSAS CITY

| | |
|---|---|
| **BRYAN BAILES** ) | |
| Individually And On Behalf Of ) | |
| All Others, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.: 2:15-cv-02457-DDC-TJJ |
| vs. ) | |
| ) | |
| **LINEAGE LOGISTICS, LLC** ) | |
| ) | |
| Defendant. ) | |

## MOTION FOR APPROVAL OF ATTORNEYS' FEES AND COSTS

COMES NOW the Plaintiff, Bryan Bailes, on behalf of himself and all others similarly situated, by and through his counsel of record, and hereby moves the Court to approve the attorneys' fees and costs sought in the Settlement Agreement and the Joint Motion for Final Approval of Class Action Settlement regarding the above captioned matter before this Court.

## INTRODUCTION

During the settlement negotiation process and pursuant to the Settlement Agreement, Parties agreed to a Total Settlement Fund that includes Plaintiff's Attorneys' fees and costs. Plaintiff is seeking and Defendant does not oppose Court approval of $49,237.00 as attorneys' fees and costs incurred by Plaintiff in litigating this matter. This amount represents 33% of the Total Settlement Fund.

The fees requested herein are fair and reasonable when analyzed under the relevant factors. Moreover, the requested fees are below the lodestar calculation, as to hours of work devoted by Plaintiff's Counsel to date.

1

## **CASE HISTORY**

On February 10, 2015, Bryan Bailes filed a class action on behalf of himself and all others against Defendant Lineage Logistics, LLC alleging violations under the Federal Fair Credit Reporting Act ("FCRA"). On November 16, 2016, Plaintiff filed an Amended Complaint alleging violations of the FCRA disclosure requirements.

Plaintiff's Counsel assumed this case on behalf of Plaintiff under a contingency agreement, despite the significant risk given the potential outcome if the case were litigated to its end. Following the filing of the Complaint an Amended Complaint was filed that added a disclosure claim and withdrew the adverse action claim. Counsel for the respective Parties engaged in the exchange of preliminary discovery which ultimately began a discussion regarding resolution.

Parties scheduled mediation on September 10, 2015 with John Phillips, and prepared accordingly. Each Party was fully and adequately informed of all facts necessary to evaluate the case for settlement. Following a full day mediation the parties were able to reach an amicable agreement. The Settlement Agreement included the agreed-upon fees and costs that are the subject of this Motion. The Settlement Agreement provides for Defendant to fund payments to Plaintiff, Plaintiff Class Counsel, the Class Administrator, and the Settlement Classes in an amount not to exceed O ne Hundred Forty-Nine Thousand Two Hundred and Five Dollars and Zero Cents ($149,205.00). The allocation of the proceeds are as follows:

    $78,468.00    Available to 3,356 Participating Class Members
    $16,500.00    Settlement Administration
    $49,237.00    Attorneys' Fees and Expenses
    $5,000.00    Service Payment to Plaintiff

## ANALYSIS

The requested fees and costs were included in the negotiations between the Parties during discussions leading to a formal Settlement Agreement. Plaintiff is seeking Court approval of attorneys' fees and costs in the amount of $49,237.00

When a settlement creates a "common fund," this Court typically applies a "hybrid" of both the "percentage-of-fund" approach and a lodestar calculation. *Bruner v. Sprint/United Management Co.,* 2009 W.L. 2058762 (D. Kan. July 14, 2009) (citing *Gottlieb v. Barry,* 64 F.3d 1439, 1445 (10th Cir. 1995)). Whatever method is used, the Court must consider the twelve *Johnson* factors, discussed below.

On a percentage basis, the requested fee of 33% of the Total Settlement Fund is presumptively reasonable and well within the range routinely approved within this District, the Tenth Circuit, and in other federal courts across the country. *See Powell v NX Utilities, LLC*, No. 15-cv-9292-JWL-GEB (Order Approving Settlement Agreement, Doc. 30) (D. Kan. Nov. 18, 2016); *Barnwell v. Corrs. Corp. of Am.*, No. 08-2151-JWL-DJW (Order Approving Settlement Agreement, Doc. 230) (D. Kan. Feb. 12, 2009) (approving award of 33% of gross settlement amount); *see also Horn, et al. Principal Financial Group, Inc. & Principal Residential Mortgage, Inc.,* 05-CV-2032-KHV (D.Kan. Dec. 2, 2005) (awarding 30% of settlement fund made available to eligible plaintiffs), *Frank v. Eastman Kodak Co.,* 228 F.R.D. 174 (W.D.N.Y. 2005) (approving fee award of 38.26% of total settlement fund in Rule 23 action case); *Kedrick v. ABC Television Appliance Rental*, 1999 WL 1027050 (N.D. W.Va. 1999) (approving 30% fee award of common fund in Rule 23 class action case). Other districts reveal that a 23%-50% fee request is reasonable under common fund employment class actions. In *Vaszlavik v. Storage Tech Corp.*, 2000 U.S. Dist. LEXIS 21140, 4-5 (D.Colo. 2000), the court addressed an ADEA

3

and ERISA class action. The court approved a 30% contingency fee be paid against the common fund. The court stated "fees for class action settlements generally range from 20%-50%." *Id.* (quoting *Maywalt v. Parker and Parsley Petroleum Co.,* 963 F. Supp. 310 (S.D.N.Y. 1997); citing *In re Rio Hair Naturalizer Prods. Liab. Litig.,* 1996 U.S. Dist. LEXIS 20440, 1996 WL 780512, p. *14 (E.D. Mich. 1996); *In re Combustion, Inc.,* 968 F. Supp. 1116, 1132). In *Carlson v. C.H. Robinson Worldwide, Inc.,* 2006 U.S. Dist. LEXIS 67108, 19-20 (D.Minn. 2006), the court addressed fees in a sex harassment class action. It allowed a percentage of the total fund at 35.5%.

All of the above case law clearly supports Counsel's request in this matter for 33% of the common fund to be approved by this Court for fees and future fees involved in the administration of this settlement.

Plaintiff's attorneys' fees are also reasonable when viewed from a lodestar perspective. To the extent courts consider lodestar in the context of approving fees in fund settlements, it is generally as a "lodestar cross-check." The Tenth Circuit has characterized this as a "hybrid approach" as it still mandates consideration of some factors traditionally used when evaluating a pure lodestar submission. *Gottlieb*, 43 F.3d at 482-83. The cross-check does not involve simply comparing the lodestar fee amount with the amount sought under the percentage of the fund. In the cross-check analysis, the court multiplies the reasonable hours worked by reasonable billing rates to calculate a time-fee value. Then, "the Court divides the percentage-fee value by the time-fee value to determine a lodestar multiplier and to test whether the percentage fee value represents an unreasonable award or 'windfall' over the reasonable value of the work performed." *In re Vioxx Prods. Liab. Litig.*, 760 F. Supp. 2d 640, 658 (E.D. La. 2010); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 751 (S.D. Tex. 2008) (same).

"The multiplier represents the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors." *In re Global Crossing Sec. & ERISA Litig.,* 225 F.R.D. 436, 468 (S.D.N.Y. 2004). The lodestar cross-check does not involve strict rules, but rather is a guide to assist courts in evaluating the reasonableness of a percentage-based fee:

> [It] need entail neither mathematical precision nor bean counting. For example, a court performing a lodestar cross-check need not scrutinize each time entry; reliance on representations by class counsel as to total hours may be sufficient. . . .  Furthermore, the lodestar cross-check can be simplified by use of a blended hourly rate . . . .

*In re Vioxx Products Liab. Litig.*, 760 F. Supp. 2d at 659 (citations omitted). The Second Circuit confirms that, "where used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) (citing *In re Prudential*, 148 F.3d at 342).

As of April 4, 2017, the collective time-fee value reported by Plaintiff's Counsel is $73,880.00. This time breaks down to (81.5 hours by partner attorney Jason Brown at $550.00 per hour; 51.6 hours by partner attorney Jayson Watkins at $550.00 per hour; and 4.5 hours by staff Kally Graham at $150 per hour)[1]. Mr. Brown and Mr. Watkins have effectively litigated and settled over one hundred and fifty FCRA cases in the past five years. Mr. Brown and Mr. Watkins customary hourly rate for FCRA cases is $750.00 per hour[2]. Ms. Graham who has

---

[1] The hourly breakdown does not include all billable time. For instance, no time was included for the 27 ECF emails regarding this case and no time was included for receipt and review of any documents delivered via ECF; with the exception of Defendant's Answer. Further, Plaintiff's firm employed an associate attorney who has since left the firm. That attorney incurred an additional 17 hours billed at $350 per hour that are not included in the time reported to the Court.

[2] Plaintiff's counsel recognizes that a hourly rate of $750 is likely higher than the prevailing rate of many attorneys in the Kansas/Missouri area. However, $750 per hour is the rate counsel charges its clients for individual cases and the amount Plaintiff's counsel has agreed on as payment from defendant corporations; one of which has been a fortune 500 company. (The one exception to this hourly rate was due to an error in calculating time that effectively

5

worked as a legal assistant for over fifteen years has an hourly rate of $150.  Pursuing this case effectively required specialized expertise by Plaintiff's Counsel. This case posed substantial risks for counsel in terms of real dollars advanced and opportunity costs. Any firm undertaking a FCRA case must be prepared to make a tremendous investment of time, energy, and financial resources. Due to the contingent nature of this work, attorneys must be prepared to make this investment with the very real possibility of an unsuccessful outcome yielding no recovery or fee award of any kind; especially if the defendant has defenses to the willfulness requirement. Such risks are outside the scope of most attorneys and firms. Plaintiff's counsel has the skill, experience, and ability to litigate these types of claims. Furthermore, Plaintiff's Counsel will continue to devote time to this case throughout the settlement process.

Through March 23, 2017 the collective time-fee value (i.e., lodestar) reported by Plaintiff's counsel is $73,880.00.  The percentage-fee value under the Settlement Agreement is $49,237.00.  The resulting multiplier (assuming all work stopped March 23, 2016, which is not the case) is within or below the ranges that courts consider reasonable. *See In re Diet Drugs Prods. Liab. Litig.*, 553 F. Supp. 2d 442, 485-87 (E.D. Pa. 2008) (2.6 multiplier applied, and collecting cases with multipliers between 2.4 and 4.45).  The Third Circuit observed that "'[m]ultiples from one to four are frequently awarded in common fund cases when the lodestar method is applied.'" *In re Cendent Corp. PRIDES Litig.*, 243 F.3d 722, 742 (quoting, i.e., *In re Prudential*, 148 F.3d at 341).  In *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n.6 (9th Cir. 2002), the Ninth Circuit performed a survey of multipliers and found "a range of 0.6–19.6, with most (20 of 24, or 83%) from 1.0 and 4.0 and a bare majority (13 of 24, or 54%) in the 1.5–3.0

---

resulted in a hourly rate of only $650 per hour charged for a consulting arrangement).  The lodestar rate in this case is calculated off $550 per hour.  This represents a $200 an hour voluntary reduction for purposes of calculating lodestar.

range."³ A 1.0 multiplier on lodestar in this instance is not only reasonable on its face; it is fully supported when examined under the *Johnson* factors adopted in this Circuit.

In light of the results achieved for their clients, Plaintiff's Counsel should be awarded the requested fees and costs. As the Supreme Court has explained, "A request for attorneys' fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983) (discussing fee awards in the context of a fee-shifting statute.

## JOHNSON FACTORS

Regarding the percentage sought, courts have concluded that the district court should consider the 12 factors articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). The *Johnson* factors include: (1) the time and labor required; (2) the novelty and difficulty of the question presented by the case; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorneys due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* As demonstrated below, the 33% sought by Plaintiff qualifies under these factors and is consistent with numerous fee awards in class and collective action settlements.

---

³ *See also*, *In re Xcel*, 364 F.Supp.2d 980, 999 (D. Minn. 2005) (finding lodestar multiplier of 4.7 reasonable); *In re St. Paul Travelers Sec. Litig.*, No. 04-3801 JRTFLN, 2006 WL 1116118, at *1 (D. Minn. Apr. 25, 2006) (approving multiplier of 3.9).

       **1.**      **The Amount Involved and the Results Obtained (Factor 8):**

The Joint Stipulation of Settlement provides for a substantial recovery by the class in the form of a Total Settlement Fund of $149,205.00, as described in the Joint Stipulation of Settlement. Of this amount, Plaintiff's Counsel is seeking 33% for fees and costs involved in the administration of this settlement. In light of the legal and factual complexities of this case, not the least of which involves establishing willfulness by the Defendant, Plaintiff believes that this is a very favorable settlement. The settlement payments are available to Settlement Class members without the uncertainty of trial and are being delivered through this settlement rather than after years of litigation. This fact alone qualifies the result of this settlement as favorable under any reasonable assessment.

In addition, the release provided by the Settlement Class members is a limited release, not a general release. Class members, other than Plaintiff Bailes (who will execute a general release as part of the consideration for his proposed incentive award), will release only those claims arising out of the Defendant's procurement of a consumer report. The narrow nature of the release exemplifies the favorable results achieved for the FCRA class. *See Ramah Navajo Chapter*, 50 F.Supp.2d at 1103-04 (noting that the limited, rather than general, nature of the release as further evidence of an exceptional result in favor of class members).

       **2.**      **Awards in Similar Cases (Factor 12):**

Based on historical awards of attorneys' fees in similar class and collective action settlements in Missouri and Kansas, the percentage of the fund requested – 33% – is presumptively reasonable. In addition to the above discussion, in such similar settlements Counsel has had attorneys' fees approved at rates of 33% of the settlement fund. *Rawlings v. The Scotts Company LLC*, Case no.: 14-00319-BCW (W.D.MO July 6, 2015) (order approving attorneys' fees and expenses at 33%); *Alame v. Norred & Associates, Inc*., Case no.: 13-04280-

NKL (W.D.MO Aug. 28, 2015) (order approving attorneys' fees and expenses at 33%); Foltz v. Guiter Center Stores, Inc., Case no.: 14-04308-NKL (W.D.MO Dec. 30, 2015) (order approving attorneys' fees and expenses at 33%); *Simons v. Aegis Communications Group, LLC*, Case no.: 14-04012-NKL (W.D.MO Jan. 15, 2015) (order approving attorneys' fees and expenses at 33%); *Walker v. Mclane/Midwest, Inc.*, Case no.: 14-04315-NKL (W.D.MO Oct. 23, 2015) (order approving attorneys' fees and expenses at 33%) *Miller et. al. v. Quest Diagnostics*, Case no.: 15CN-CV00284 (Clinton County Circuit Court Missouri Nov. 17, 2015) (order approving attorneys' fees and expenses at 33%); *Barnwell, et al. v. Corrections Corp. of America,* Case no.: 08-2151 (D.Kan. February 12, 2009) (order approving attorneys' fees and expenses at 33%); *Braun v Superior Industries International Inc*., Case no. 09-2560 (D.Kan. July 28, 2011) (order approving attorneys' fees and expenses at 33%); *Cody v. Industrial Staffing Services, Inc.*, Case no.: 15-04009-NKL (W.D.MO March 3, 2016) (order approving attorneys' fees and expenses at 33%) *Nicolet v. Butterball LLC*, Case no: 2:13-cv-04138-NKL (W.D.MO August 11, 2014); and *Dawn v. HVM L.L.C., d/b/a Extended Stay America*, Case no.: 14-4104-NKL (W.D.MO May 29, 2015) (order approving attorneys' fees and expenses at 33. The amount sought here is consistent with Counsel's prior experiences and is supported by established case law.

All of the above case law clearly supports Counsel's request in this matter for 33% of the common fund to be approved by this Court for fees and future fees involved in the administration of this settlement.

### 3. Preclusion of Other Work (Factor 4):

Attorneys Jason Brown and Jayson Watkins are partners in the firm of Brown & Watkins LLC. Plaintiff's counsel consciously decided to embark upon litigating a class action matter that involved a large number of class members. The Defendant is a substantial corporation that expressed a willingness to fully litigate this case, if necessary. Plaintiff's counsel took significant

risk deciding to pursue this class matter given the potential outcome if the case were litigated to its end. Plaintiff's counsel takes all cases under the assumption that lengthy litigation will result. In turn, this involves a large assumption of risk to their respective practices. In this case, the litigation resolved in approximately one year. It could have taken many years, involved dozens of depositions, substantial motion practice, travel, additional expert witness costs, and costly document production by the Defendant. The out-of-pocket expenses alone could easily have exceeded $100,000.00.

The time requirements on Plaintiff's counsel would have required counsel to sacrifice a large portion of their practices in the pursuit of one case. Yet, this was a risk counsel was willing to take when pursuing this matter. For these reasons, Plaintiff's counsel rejected the acceptance of other cases during this time frame due to the existing and expected demands of this litigation.

### 4. The Customary Fee and Whether it is Fixed or Contingent (Factors 5 and 6):

The customary fee in these types of cases is a fee contingent upon a successful outcome. *See, Ramah Navajo Chapter v. Babbitt*, 50 F.Supp.2d 1091, 1104 (D.N.M. 1999). In prosecuting its consumer rights and labor and employment matters, Brown & Watkins, LLC enters into contingent fee agreements providing for a percentage of the recovery (usually between 33%-40%). This is due to the fact that the individuals represented are not able to pay any attorneys' fees, expenses, or costs. In turn, counsel's firm fronts all out-of-pocket expenses in litigation. If unsuccessful, counsel is not paid any fees and usually not reimbursed any expenses. As previously noted, counsel's firm embarked in litigating this case whereby the expenses alone could easily exceed $100,000.00. Therefore, the risk taken was enormous in that, if unsuccessful in the litigation, the firm would not only have lost all its advanced costs, but would not have received any attorney fee income for a number of years. In this case, Counsel and the Plaintiff

entered into a contingent fee agreement calling for Counsel to receive fees in the amount of 40% of a common fund, if any, obtained by settlement. The requested fees are thus 7% less than provided for in the contingent fee agreement, which further evidences the reasonableness of the requested fee award.

### 5. Novelty/Difficulty of Issues & Undesirability of the Case (Factors 2 and 10):

FCRA claims typically involve complex mixed questions of fact and law -- *e.g.*, what constitutes "willfulness," the interplay of arguably inconsistent provisions, and arguments as to whether injury and damages were actually suffered. Given the dearth of guidance and what has, in certain circumstances, been held to be less than pellucid statutory text, Plaintiff's Counsel undertook significant risk pursuing this matter.

FCRA class litigation is very difficult to pursue. FCRA cases lack a substantial body of case law, many of the available decisions conflict with one another, and the Supreme Court's decision in *Spokeo* has greatly increased the risk of cases being dismissed and has increased litigation costs and resources needed to litigate a FCRA case. Additionally, while the FTC has provided advisory opinions on the FCRA, those opinions are over a decade old and courts have given different degrees of deference to the opinions. Moreover, the ability to establish that the actions of the Defendant were willful makes FCRA claims very difficult.

### 6. Skill Required and Attorneys' Experience, Reputation and Ability (Factors 3 and 9):

Large scale class actions are complicated and time-consuming matters. Very few firms in the nation, much less Kansas or Missouri, are actively litigating FCRA claims. Any attorney undertaking such a case must be prepared to make a tremendous investment of time, energy, and financial resources. Due to the contingent nature of this work, such attorneys must be prepared to make this investment with the very real possibility of an unsuccessful outcome yielding no

11

recovery or fee award of any kind, especially if the defendant has defenses to the willfulness requirement. Such risks are outside the scope of most attorneys and firms. Plaintiff's counsel has the skill, experience, and ability to litigate these types of claims.

Plaintiff's counsel Jason Brown of Brown & Watkins, LLC has had over sixteen years of experience as an attorney with the vast majority of the last eight years dealing with employment matters including FLSA collective action cases and FCRA class actions.[4] Mr. Brown is currently litigating or assisting in multiple national FCRA class actions. Counsel is also a member of the Kansas City chapter of the National Employment Attorneys Association and a member of the National Association for Consumer Advocates. The ability and skill of the Plaintiff's Counsel in this matter played a part in reaching this fair and reasonable settlement.

Plaintiff's Counsel Jayson Watkins of Brown & Watkins, LLC has had over eight years of experience as an attorney with the vast majority of the last seven years dealing with employment matters including FLSA collective action cases and FCRA class actions. Mr. Watkins is currently litigating or assisting in multiple national FCRA class actions. Counsel is also a member of the Kansas City chapter of the National Employment Attorneys Association and a member of the National Association of Consumer Advocates. Counsel was recognized by Super Lawyers as a Rising Star in Missouri in 2016. The ability and skill of the Plaintiff's Counsel in this matter played a part in reaching this fair and reasonable settlement.

### 7. Time and Labor Required (Factor 1):

In common fund cases it is appropriate to give *less* weight to the "time required" factor, particularly in comparison to the quality of the settlement delivered by class Counsel – the "results obtained" factor. "Indeed, 'the most critical factor' in determining the reasonableness of

---

[4] A Declaration and firm resume are attached as further support. Exhibit 1.

a fee award 'is the degree of success obtained.'" *Farrar v. Hobby,* 506 U.S. 103, 114, (1992); *Ramah Navajo Chapter v. Babbitt*, 50 F.Supp.2d 1091, 1104 (D.N.M. 1999) ("In the contingency fee context the marketplace would value the services by the results obtained, not by the hours required to achieve them.  Therefore, the lodestar analysis . . . either as the primary means of setting the award or as a check on the reasonableness of a proposed percentage-would not provide an accurate gauge by which to judge the award.").  "While time is a factor, it should be stressed that it is only of relative importance."  *Blank v. Talley Indus., Inc.* 390 F. Supp. 1, 5 (S.D.N.Y. 1975) (awarding fees under lodestar approach).

Regardless, Plaintiff's Counsel has invested a substantial amount of time in this matter, including propounding discovery, reviewing documents, filing an amended complaint, engaging in numerous phone conferences with Defendant's counsel, and preparing for and anticipating a hard-fought mediation, that was ultimately avoided.

In addition, there are many more hours of work yet to be performed by counsel in this case.  It should be expected that a certain percent of the class will contact counsel regarding settlement payment along with other questions.  Plaintiff's counsel will also have to work with the Settlement Administrator to process this settlement.  This is Plaintiff's counsel only opportunity to be paid for these future services.  Plaintiff's counsel cannot come back again and ask for more fees for this future work.

## **CONCLUSION**

Because the parties' Settlement fully comports with the requirements set out in Rules 23(a) and 23(b)(3), and because the Settlement is fair and reasonable, the Court should grant Plaintiff's request for Attorneys' Fees and Costs.

Respectfully submitted,

By*/s/Jayson A. Watkins*_____
Charles Jason Brown KS 70700
Jayson A. Watkins KS 78463
Brown & Watkins LLC
301 S. US 169 Hwy
Gower Missouri 64454
Tel: 816-505-4529
Fax: 816-424-1337
brown@brownandwatkins.com
watkins@brownandwatkins.com
ATTORNEYS FOR PLAINTIFF