# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

BRYAN BAILES,
Individually and on Behalf of
All Others,

    Plaintiff,

v.

LINEAGE LOGISTICS, LLC,

    Defendant.

Case No. 15-cv-02457-DDC-TJJ

## MEMORANDUM AND ORDER

Plaintiff Bryan Bailes brings this lawsuit for himself and putative class members alleging that defendant Lineage Logistics, LLC violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681–81x (2012). The parties met, negotiated, and agreed to a compromise. On May 9, 2016, they asked the court to approve the result of their efforts: a proposed class settlement. Doc. 24-1. On August 19, 2016, the court denied their motion and gave the parties time to renegotiate certain aspects of their proposed compromise. Doc. 25. The parties again met, negotiated, and agreed to a new proposed class settlement.

On December 15, 2016, the court preliminarily approved this new proposed settlement agreement ("Proposed Settlement") and conditionally certified a settlement class. Doc. 32. Almost a month later, the court approved the parties' proposed notice and notice plan. Doc. 35. The parties filed their Joint Motion for Order for Final Approval of Class Action Settlement on April 19, 2017, and the same day plaintiff filed a Motion for Attorney Fees and Costs. Docs. 38, 39. The court held a fairness hearing on April 25, 2017, and is now ready to rule both motions.

## **Proposed Settlement and Class Notice Details**[1]

Once the court granted the parties' motion for preliminary approval, the settlement administrator, Analytics Consulting, LLC, began sending the court-approved notice to putative class members. The parties expected the class to consist of 3,400 members, but the actual number was slightly smaller—3,356. After the initial mailing, the settlement administrator ran a skip trace and re-mailed notices to 694 class members. The administrator then ran a second skip trace, and re-mailed notices to 29 class members. All told, the parties could not locate 425 of the 3,356 putative class members. So, all that left 2,931 members who received actual notice. None of them opted out or objected.

The parties have agreed to settle the class's claims for a total of $149,205. They propose to distribute this sum in this fashion: attorney fees and costs of $49,237 (should the court approve that amount); settlement administrator costs of $16,500; a $5,000 incentive award for the named plaintiff, Bryan Bailes; and the remainder, $78,468, to be divided equally among the 2,931 class members "to whom notice was sent and not returned as undeliverable." Doc. 28-3 at 5–6, 8. This formula would provide, if approved, each class member who received notice with about $26.77. If finally approved, the Proposed Settlement requires the administrator to mail settlement checks to all class members "to whom notice was sent and not returned as undeliverable." *Id.* at 8. Any checks not cashed within 120 days of issuance would pass to Goodwill Industries International, Inc. as a cy pres beneficiary.

In addition to the monetary considerations detailed above, the parties have agreed not to publicize the settlement. Plaintiff and all class members also have agreed to release all claims they may have against the defendant based on plaintiff's First Amended Complaint.

---

[1] The court has recited the facts of this case at length in its previous orders, and so focuses its discussion here on the facts necessary to determine whether to grant final approval of the Proposed Settlement. Docs. 25, 32.

## Analysis

**I.      Joint Motion for Order for Final Approval of Class Action Settlement**

After reviewing parties' submissions, the court concludes that it cannot currently approve the Proposed Settlement because the information the parties provide is insufficient to allow the court to make the findings necessary for approval.  Specifically, the parties' joint motion never asks the court to issue a final class certification order.  And the parties did not raise or present evidence on this issue during the April 25, 2017 fairness hearing.

As the Supreme Court explained in *Amchem Products, Inc. v. Windsor*, class certification under Federal Rule of Civil Procedure 23(a)–(b) must precede settlement approval under Rule 23(e).  521 U.S. 591, 619–22 (1997); *see also id.* at 622 ("Federal courts, in any case, lack authority to substitute for Rule 23's certification criteria a standard never adopted—that if a settlement is 'fair,' then certification is proper.").  Here, the court has not issued a final certification order certifying the settlement class.  It merely has certified the class conditionally for purposes of sending notice, gathering objections, and laying a foundation for a fruitful fairness hearing.[2]  It remains, then, for the parties to seek final class certification.[3]

Because the parties neither have moved for nor submitted information about final class certification, the court cannot yet certify a class action under Rule 23, and so it cannot grant final

---

[2] *See In re Motor Fuel Temperature Sales Practices Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012); *see also West v. Circle K Stores, Inc.*, No. S-04-0438 WBS GGH, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006) ("[I]n this first order the court will only 'determine[ ] whether a proposed class action settlement deserves *preliminary* approval' and lay the ground work for a future fairness hearing . . . ." (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004)).

[3] *See Freebird, Inc. v. Merit Energy Co.*, No. 10-1154-KHV, 2013 WL 1151264, at *2 (D. Kan. Mar. 19, 2013) (considering whether to grant final certification of the conditionally certified settlement class); *In re Motor Fuel Temperature Sales Practices Litig.*, No. 07-MD-1840-KHV, 2015 WL 5010048, at *1 (D. Kan. Aug. 21, 2015) (same); *In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, No. 1:01-cv-9000, 2001 WL 1842315, at *3 (N.D. Ohio Oct. 20, 2001) ("The parties have jointly approached the Court, seeking only conditional certification of this matter as a class action and preliminary approval of their proposed settlement.  As the parties understand, their motion for approval of the proposed settlement agreement, if granted, is only the first step in an extensive and searching judicial process, which may or may not result in final approval of a settlement in this matter.").

approval of the Proposed Settlement.  *Cf. Gambrell v. Weber Carpet, Inc.*, No. 10-2131-KHV, 2012 WL 162403, at *3 (D. Kan. Jan. 19, 2012) (denying motion to approve FLSA collective action because the parties did not ask the court to issue a final class certification order and did not provide sufficient information for the court to make a final class certification decision).

The court presumes that class counsel will cure this omission and promptly file a motion seeking final class certification (and showing why that result comports with the governing law). But another aspect of the Proposed Settlement presents a more vexing problem.

Under Rule 23(e), any "settlement, compromise or dismissal of certified class claims" requires court approval.  *Freebird, Inc. v. Merit Energy Co.*, No. 10-1154-KHV, 2012 WL 6085135, at *4 (D. Kan. Dec. 6, 2012).  The court may approve a settlement only if it finds that the proposed settlement "is fair, reasonable and adequate" in all respects.  *Id*; *see also* Fed. R. Civ. P. 23(e)(2).  To determine whether a proposed settlement is fair, reasonable, and adequate, the court considers four factors:  (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) whether, in the judgment of the parties, the settlement is fair and reasonable.  *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).

At the preliminary approval stage, the court preliminarily found that the Proposed Settlement satisfied each factor.  Doc. 32.  But the court explicitly deferred a final decision pending notice to the class members and a full fairness hearing.  *Id.*  Now, with the benefit of a fairness hearing, the court retains a concern about final approval:  plaintiff's incentive award.  In many class actions, the parties' settlement agreement allows the named plaintiffs to seek an

incentive award from the court. *See, e.g.*, *In re Motor Fuel Temperature Sales Practices Litig.*, 271 F.R.D. 263, 293 (D. Kan. 2010) ("Here, the proposed settlement allows class representatives to request an award of $2,500, but it does not *require* an incentive payment. Instead, it leaves the [c]ourt discretion to award incentive fees if warranted."). But the settlement proposed here seems to *require* the court to award a $5,000 incentive award to plaintiff as an essential element of the agreement. *See* Doc. 28-3 at 6 (providing in Joint Stipulation of Settlement that $5,000 of the gross settlement amount "*will be* deducted" and paid to Mr. Bailes as an "Incentive Award" (emphasis added)).

Two characteristics of plaintiff's proposed incentive award present substantial concerns about the overall fairness of the Proposed Settlement. *See* 7B Alan Wright et al., *Federal Practice and Procedure* § 1797.1 (3d ed.), Westlaw (updated Apr. 2017) ("The ability to obtain an incentive award may create of conflict of interest between the named plaintiffs and the absent class members under certain circumstances . . . ."). Under the settlement proposed here, plaintiff's total recovery is about 185 times greater than the recovery of his fellow class members. And, plaintiff's $5,000 incentive award represents 3.35% of the total cost of the settlement ($5,000 vis-à-vis $149,205), and almost 6% of the $83,568 to be paid to plaintiff and the class members. The court believes that an incentive award of this dimension threatens the overall fairness of the Proposed Settlement. The discrepancy between plaintiff's recovery and the recovery of other class members alone gives the court pause.

At the fairness hearing, the court apprised counsel of its concern. Plaintiff's counsel responded, representing that plaintiff had served as a closely involved class representative, calling about once every other week to check on the case's progress. Counsel said those phone calls lasted anywhere from 3 to 25 minutes. Even if the court could accept a generalization of

this kind as a basis for an incentive award, it would not justify a $5,000 award. Counting the time between the case's filing in February 2015 and the fairness hearing in April 2017 as 110 weeks, 55 phone calls—so, one every other week—lasting 3 minutes to 25 minutes each would compensate plaintiff for his time at a rate between, approximately, $1,818 and $218 per hour.[4]

The court is mindful that federal courts—including this court and the judicial officer singing this Order—have approved incentive awards. *See, e.g.*, *Nieberding v. Barrette Outdoor Living, Inc.*, 129 F. Supp. 3d 1236, 1250–52 (D. Kan. 2015) (rejecting request for incentive award of 2% of the common fund in a settlement of Kansas Consumer Protection Act claims and approving, instead, an award of 1%, *i.e.*, $3,500 award in a $350,000 settlement). But our court consistently evaluates incentive awards (or service awards, as they are sometimes termed) and rejects them where they are disproportionate or provide excessive compensation. *See, e.g.*, *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1271 (D. Kan. 2006) (reducing requested service awards to each of four named plaintiffs from $15,000 to $5,000, even though the total settlement exceeded $25 million, because the $5,000 award adequately compensated plaintiffs for the 80 hours that, on average, each one named plaintiff had devoted to the lawsuit); *Barbosa v. Nat'l Beef Packing Co., LLC.*, No. 12-2311-KHV, 2015 WL 4920292, at *6 (D. Kan. Aug. 18, 2015) (rejecting proposed service award of $3,500 to each of two named plaintiffs where each spent 24.1 hours and 9.6 hours respectively on the case, and instead concluding that $20 per hour for the time plaintiffs spent on the case was a fair and reasonable service award); *Bruner v. Sprint/United Mgmt. Co.*, Nos. 07-2164-KHV, 08-2133-KHV, 08-2149-KHV, 2009 WL 2058762, at *11 (D. Kan. July 14, 2009) (rejecting $10,000 proposed service award to named

---

[4] 55 calls at three minutes each amounts to 2.75 hours. Rewarding that effort with a $5,000 payment produces an hourly rate of more than $1,800. And, if one uses the midpoint of counsel's "3 to 25 minutes" estimate—14 minutes—a $5,000 payment produces an hourly rate of almost $390. And even if one presumes that each one of the calls lasted 25 minutes—the maximum of counsel's estimate—that produces an hourly rate of about $218.

6

plaintiff in an $8.7 million settlement because the plaintiff failed to provide specific details about the amount of time she invested in the suit and awarding a $5,000 service award instead).

Neither the written submissions or oral presentations here persuades the court that plaintiff should receive nearly 6% of the total settlement devoted to class recovery (*i.e.*, the class's net recovery). Nor can the court abide an effective hourly rate of $218—much less $1,818 per hour. A settlement agreement that requires the court to award plaintiff a $5,000 incentive award, on the facts as the court now knows them, cannot be a fair, reasonable, and adequate one. The court would thus decline to approve a settlement including a mandatory $5,000 incentive award for plaintiff. This does not mean the court will approve no incentive award. So, if the parties decide to reformulate the Proposed Settlement to make any incentive award discretionary, the court will consider granting an award that comports with the precedent in this district.[5]

## II. Motion for Attorney Fees and Costs

Next, plaintiff asks the court to approve an attorneys' fee award of 33% of the total settlement fund, or $49,237. Because plaintiff has failed to show that the Proposed Settlement is

---

[5] Any such reduction of plaintiff's incentive award would not require new notice to the class or a new fairness hearing because it would, in effect, *increase* the class members' recovery. *See In re Integra Realty Res., Inc.*, 262 F.3d 1089, 1111 (10th Cir. 2001) (affirming district court's refusal to issue a second notice where the amended settlement agreement "merely expanded the rights of class members and gave members the right to opt out after they saw all of the terms of the settlement" because the Circuit "s[aw] no way that the court's failure to provide new notice of the opt-out rights prior to accepting the settlement gave rise to a risk that unfavorable terms would be forced upon some class members or otherwise diminish[] class members' ability to bring objections before the court"); *Keepseagle v. Vilsack*, 102 F. Supp. 3d 306, 313–14 (D.D.C. 2015) (considering when amended settlement requires additional notice thoroughly and concluding that "an amendment that neither adds to the *res judicata* effect of a judgment by expanding the scope of covered claims nor otherwise limits any legal right held by a class member need not be subject to a renewed Rule 23(e) process" and noting that "an amendment requires supplemental notice only when it "would have a material adverse effect on the rights of class members" (citations omitted)); *In re Motor Fuel Temperature Sales Practices Litig.*, No. 07-MD-1840-KHV, 2011 WL 4431090, at *6 (D. Kan. Sept. 22, 2011) ("Broadly interpreted, this language [in Rule 23(e)] is sufficiently flexible to permit the Court to approve a compromise but to determine that class notice is not required when the compromise will not result in any prejudice to the class." (citation and footnote omitted)); *see also Knuckles v. Elliott*, No. 15-10175, 2016 WL 3912816, at *6 (E.D. Mich. July 20, 2016) (granting final approval of class action settlement without requiring another round of notice or another fairness hearing even though the parties had amended the settlement agreement after the fairness hearing because the amended agreement did not adversely affect class members' rights).

fair, reasonable, and adequate, this request is premature. The court thus denies plaintiff's Motion for Attorney Fees and Costs without prejudice.

This does not mean that the court would reject such a fee request. But the court notes that defendant agreed not to contest plaintiff's request for $49,237 in attorneys' fees and costs. *See* Doc. 28-3 at 6. "When a settlement agreement is reached and [the] defendant agrees [not to] oppose an award of attorneys' fees from a common fund, [the] defendant has no incentive to bargain for lower fees." *Barbosa*, 2015 WL 4920292, at *9. In these circumstances, our court "skeptically examine[s] and analyze[s] the fee and cost proposal." *Id.* (citing *Bruner*, 2009 WL 2058762, at *10). In our Circuit, this requires the court to consider "the twelve factors originally developed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)," commonly called the 12 *Johnson* factors. *Gottlieb v. Barry*, 43 F.3d 474, 482 & n.4 (10th Cir. 1994). Those 12 factors are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions presented by the case, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorneys due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) any time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1269 (D. Kan. 2006) (citation omitted).

Here, plaintiff's counsel has submitted some information to justify his fee request but, in response to this Memorandum and Order, the parties may decide to reformulate their motion for final approval—or even their proposed settlement—and resubmit it. If the parties choose to retain their current Proposed Settlement or if a reformulated proposed settlement includes defendant's promise not to oppose a fee award, the court will review the 12 *Johnson* factors with the requisite skepticism. This approach requires more than a passing mention of the hours

logged by each attorney and that attorney's usual hourly rate in plaintiff's briefing. Indeed, our Circuit requires much more to secure fee approval.[6]

### III. Conclusion

The court currently cannot approve the parties' proposed settlement based on the record and motions before it. The court thus denies the parties' Joint Motion for Order for Final Approval of Class Action Settlement and plaintiff's Motion for Attorney Fees and Costs without prejudice to refiling. Should the parties choose to revise and refile a motion for final approval, the court will consider whether approval is warranted under the governing standard.

**IT IS THEREFORE ORDERED THAT** the parties' Joint Motion for Order for Final Approval of Class Action Settlement (Doc. 38) is denied without prejudice.

**IT IS FURTHER ORDERED THAT** Bryan Bailes's Motion for Attorney Fees and Costs (Doc. 39) is denied without prejudice.

**IT IS FURTHER ORDERED THAT** the parties must notify the court **on or before July 6, 2017** of their intention either to (1) file a revised settlement agreement and/or motion for final approval and supporting documentation in accordance with this Memorandum and Order; or (2) abandon settlement and proceed to litigate this dispute.

**IT IS SO ORDERED.**

---

[6] *See, e.g.*, *Beard v. Teska*, 31 F.3d 942, 956 (10th Cir. 1994) ("[T]he relevant market value is not the price that the particular lawyer chosen may be paid by willing purchasers of his or her services, but rather the price that is customarily paid in the community for services like those involved in the case at hand."), *abrogated on other grounds by Buckhannon Bd. & Care Homes, Inc. v. W. Va. Dept. of Health & Human Res.*, 532 U.S. 598 (2001); *id.* at 955 ("[O]n the hourly rate issue, the applicant may meet that burden by way of: 'satisfactory evidence—in addition to the attorney's own affidavit—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably compared skill, experience, and reputation.'" (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984))); *Wilhelm v. TLC Lawn Care, Inc.*, No. 07-2465-KHV, 2009 WL 57133, at *4 & n.16 (D. Kan. Jan. 8, 2009) (denying fee-award request even though plaintiffs provided affidavits from other local attorneys, among other evidence, because plaintiffs' own attorneys' affidavits simply "opine[d] that the rates which they request are fair and encourage[d] the [c]ourt to unseal cases in which they ha[d] obtained fee awards").

**Dated this 6th day of June, 2017, at Topeka, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**