# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

BRYAN BAILES,
Individually and on Behalf of
All Others,

    Plaintiff,

v.

LINEAGE LOGISTICS, LLC,

    Defendant.

Case No. 15-2457-DDC-TJJ

## MEMORANDUM AND ORDER

Plaintiff Bryan Bailes brings this lawsuit on behalf of himself and putative class members alleging that defendant, Lineage Logistics, LLC, violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681–81x. The parties met, negotiated, and agreed to a compromise. On May 9, 2016, they asked the court to approve the result of their efforts: a proposed class settlement. Doc. 24-1. On August 19, 2016, the court denied their motion and gave the parties time to renegotiate. Doc. 25. The parties met, negotiated, and agreed to a new proposed class settlement. On December 15, 2016, the court approved this new proposed settlement agreement and certified the settlement class. Doc. 32. The court later approved the parties' proposed notice and notice plan. Doc. 35. The parties filed their Joint Motion for Order for Final Approval of Class Action Settlement on April 19, 2017, and plaintiff filed a Motion for Attorney Fees and Costs the same day. Docs. 38, 39. The court held a final fairness hearing on April 25, 2017.

For reasons explained in the court's June 6, 2017 Order, the court denied both the parties' Joint Motion for Order for Final Approval of Class Action Settlement and plaintiff's Motion for Attorney Fees and Costs. Doc. 41. But, the court's June 6 Order denied these motions without

prejudice. So, on July 28, 2017, the parties filed a Joint Motion for Order for Final Class Certification and Approval of Class Action Settlement. Doc. 46. That same day, plaintiff filed a renewed Motion for Attorney Fees and Costs. Doc. 47. The court has reviewed the parties' submissions and, for reasons explained below, grants both motions.

## **Proposed Settlement Agreement and Class Notice Details[1]**

Once the court granted the parties' motion for preliminary approval, the settlement administrator, Analytics Consulting, LLC, began sending out the court-approved notice to potential class members. The parties initially expected the class to consist of 3,400 members, but the actual number decreased slightly to 3,356. After the initial mailing, the settlement administrator ran a skip trace and re-mailed notices to 694 class members. The administrator then ran a second skip trace, and re-mailed notices to 29 class members. All told, the parties were unable to locate 425 of the 3,356 class members. Of the 2,931 members who received notice, none opted out and none objected.

The parties have agreed to settle the class's claims for a total of $149,205. They propose to distribute this sum in this fashion: attorneys' fees and costs of $49,237 (should the court approve the amount); settlement administrator costs of $16,500; a $2,500 incentive award for Bryan Bailes, the named plaintiff (should the court approve the amount); and then the remainder, $80,968, to be distributed among the 2,931 class members "to whom notice was sent and not returned as undeliverable." Doc. 46-2 at 6–7, 9. So, each class member who received notice will recover about $27.62. If finally approved, the settlement agreement requires the administrator to mail settlement checks to all class members "to whom notice was sent and not returned as

---

[1] The court has recited the facts of this case at length in its previous orders, and so the discussion here focuses on the facts necessary to determine whether to grant final approval of the parties' proposed settlement agreement. Docs. 25, 32.

2

undeliverable." Doc. 46-2 at 9.  Any checks not cashed within 120 days of issuance will pass to Goodwill Industries International, Inc. as a cy pres beneficiary.

In addition to the monetary considerations detailed above, the parties have agreed not to publicize the settlement.  Plaintiff and all class members also have agreed to release all claims they may have against the defendant based on plaintiff's First Amended Complaint.

## Analysis

I. **Joint Motion for Order for Final Class Certification and Approval of Class Action Settlement**

    A.    **Final Class Certification**

Class certification is appropriate if, after rigorous analysis, the court finds that the proposed class satisfies the requirements of Federal Rule of Civil Procedure 23.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011).  To certify a class seeking damages for a common injury—as this proposed class seeks—a plaintiff must meet six requirements.  Four are found in Rule 23(a) and two come from Rule 23(b)(3).  Namely, the court must find that:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical to the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)–(4).  And, to satisfy Rule 23(b)(3), the court must also find that: (1) the common questions of law or fact predominate over individualized questions; and (2) a class action is the superior method for adjudicating the controversy.  In order, these six requirements are called numerosity, commonality, typicality, adequacy, predominance, and superiority.

Initially, the court was persuaded that all six requirements are met. The parties' representations during the fairness hearing and in their briefing convinces the court that its initial, conditional class certification analysis still applies and, thus, the court grants the parties' request to certify the settlement class. The court certifies the following class for settlement purposes only:

> all individuals from whom, Lineage obtained written consent between February 5, 2013 and March 26, 2015, using a form titled Disclosure and Authorization Regarding Obtaining Consumer and/or Investigative Reports for Employment, to conduct a background check and upon whom Lineage subsequently obtained a background check.

Doc. 46-2 at 3.

### B. Final Approval of Class Action Settlement

Under Federal Rule of Civil Procedure 23(e), any "settlement, compromise or dismissal of certified class claims" requires court approval. *Freebird, Inc. v. Merit Energy Co.*, No. 10-1154-KHV, 2012 WL 6085135, at *4 (D. Kan. Dec. 6, 2012). The court may approve a settlement if it finds that the putative settlement "is fair, reasonable and adequate." *Id*; *see also* Fed. R. Civ. P. 23(e)(2).

To determine whether a proposed settlement is fair, reasonable and adequate, the court considers the following factors: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) whether the judgment of the parties that the settlement is fair and reasonable. *Rutter*, 314 F.3d at 1888.

At the preliminary approval stage, the court found that the proposed settlement agreement satisfied these factors but deferred a final decision pending notice to the class members and a full fairness hearing. Doc. 32. After the benefit of a fairness hearing, the court retained one concern

about granting final approval of the proposed incentive award to plaintiff. *See* Doc. 41 at 7–8. The parties' amended proposed settlement addressed the court's concern, reducing the incentive award to $2,500. Doc. 46-2 at 7. This reduction mitigates the court's concern, at least somewhat. For instance, it reduces the effective hourly rate for plaintiff's services by 50%; it also reduces the proportion of the award to the total recovery by the same percentage. *See* Doc. 41 at 5, 6 n. 4 (calculating ratio of recovery and effective hourly rate of incentive award previously requested).

While the court retains misgivings about the hazy estimates used to justify the proposed award, it recognizes that the class members would not have recovered anything without a plaintiff willing to bring suit and serve as a class representative. Balancing its continuing concerns against the essential role discharged by plaintiff, the court reluctantly approves the $2,500 incentive award requested by the proposed settlement. While the record here falls short of ideal, at least the award comports with incentive awards approved in other FCRA cases. *E.g.*, *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 690–91 (D. Md. 2013) (approving a $2,500 incentive award for each of the named plaintiffs in an FCRA case); *Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402, 424 (E.D. Pa. 2010) (approving a $1,000 incentive award to named plaintiff in FCRA case).

In sum, the court grants the parties' Joint Motion for Order for Final Approval of Class Action Settlement.

## II. Motion for Attorney Fees and Costs

Next, plaintiff asks the court to approve attorneys' fees of 33% of the total settlement payment, or $49,237. "An award of attorneys' fees is a matter uniquely within the discretion of the trial judge," but the "fee the trial court establishe[s] must be reasonable." *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 453 (10th Cir. 1988). When a common fund is created by

settlement—as it is here—courts apply "one of two methods to determine reasonable attorneys' fee awards: a percentage of the fund or the lodestar method." *Barbosa v. Nat'l Beef Packing Co., LLC*, No. 12-2311-KHV, 2015 WL 4920292, at *7 (D. Kan. Aug. 18, 2015) (citing *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 (10th Cir. 1995)). "The Tenth Circuit applies a hybrid approach, which combines the percentage fee method with the specific factors traditionally used to calculate the lodestar." *Id.* (citing *Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994)). When applying this hybrid approach, these two methods complement each other: in a common fund case, the Tenth Circuit favors application of the percentage-of-the-fund method, *Gottlieb*, 43 F.3d at 483, but courts "have discretion to reduce an award of attorneys' fees" if it would be "unreasonable under the lodestar approach," *Barbosa*, 2015 WL 4920292 at *7 (citations omitted). "In all cases, the [c]ourt must consider the factors listed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)," called the 12 *Johnson* factors. *Barbosa*, 2015 WL 4920292 at *7 (first citing *Rosenbaum*, 64 F.3d at 1445; then citing *Ramos v. Lamm*, 713 F.2d 546, 552 (10th Cir. 1983), *overruled on other grounds by Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 725 (1987)). Those 12 factors are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions presented by the case, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorneys due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) any time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*In re Sprint Corp.*, 443 F. Supp. 2d at 1269 (citing *Rosenbaum*, 64 F.3d at 1145 & n.3).

The Tenth Circuit has explained that it adopted these factors "[i]n part . . . to ensure that district courts articulate specific reasons for fee awards to give [the Circuit] an adequate basis for review." *Ramos*, 713 F.2d at 552. The Circuit also recognizes "that while the factors set out in

*Johnson* are useful, some are seldom applicable, and none is self-actuating." *Id.* (citing *Copeland v. Marshall*, 641 F.2d 880, 890 (D.C. Cir. 1980)). This means, as our Circuit explained in *Brown v. Phillips Petroleum Co.*: "[R]arely are all of the Johnson factors applicable; this is particularly so in a common fund situation." 838 F.2d at 456 (citing *Ramos*, 713 F.2d at 552). Here, only 10 of the 12 facts apply—factors seven and eleven are of no help to the court's analysis.

After considering these 10 factors and applying them to this case, the court finds that the requested fee is justified under both the percentage-of-the-fund and lodestar methods. Because the percentage-of-the-fund method is preferred for common fund cases like this one, the court conducts its analysis of the 12 *Johnson* factors based on plaintiff's requested 33% fee award, and then checks that result against the lodestar method.

    **A.**     **Factor One: Time and Labor**

As an exhibit to plaintiff's motion, plaintiff includes an hourly analysis of counsel's time and labor with Jayson Watkin's Declaration. *See* Doc. 47-1 at 9–22. This hourly analysis reports a total billable time of 188.3 hours divided among Jason Brown, Jayson Watkins, Bill Burris, and Kally Graham. Doc. 47-1 at 9. The hourly analysis also provides a by-task time record for each of those four individuals.

Although the time-and-labor factor carries less weight in common fund cases, "it is a relevant factor and the availability of contemporaneous time records enhances the trial court's ability to properly evaluate it. *Brown*, 838 F.2d at 456 n.3. Plaintiff here has provided a detailed time record of the tasks performed. The tasks involved in this case included propounding discovery, reviewing documents, filing an amended complaint, engaging in many phone conferences with defendant's counsel, preparing for and participating in mediation, and renegotiating the proposed settlement after the court denied plaintiff's first motion for

7

preliminary approval. The court finds that this litigation effort required the labor described above and justifies the time recorded for it. The court thus concludes that the total number of hours expended prosecuting this action is fair and reasonable for the services provided.

> B. Factor Two: Novelty and Difficulty of Questions Presented

This case presents a somewhat novel issue: what constitutes a willful violation of the FCRA? A split of authority exists on this question. *See Lengel v. HomeAdvisor, Inc.*, 102 F. Supp. 3d 1202, 1211–12 (D. Kan. 2015) (discussing statutory-interpretation split between district courts). Some district courts have ruled that a disclosure form that contains other information— for instance, a liability waiver—does not violate the FCRA. *E.g.*, *Smith v. Waverly Partners, LLC*, No. 3:10-cv-00028-RLV-DSC, 2012 WL 3645324, at *6 (W.D.N.C. Aug. 23, 2012); *Burghy v. Dayton Racquet Club, Inc.*, 695 F. Supp. 2d 689, 699 (S.D. Ohio 2010). In contrast, others have held that it does violate the act. *E.g.*, *Lengel*, 102 F. Supp. 3d at 1211–12; *Singleton v. Domino's Pizza, LLC*, No. DKC 11-1823, 2012 WL 245965, at *8–9 (D. Md. Jan. 25, 2012). And only one circuit appears to have addressed the issue. In March of this year, the Ninth Circuit held that "inclusion of a liability waiver in a disclosure document" is a willful violation of the FCRA. *Syed v. M-I, LLC*, 853 F.3d 492, 505–06 (9th Cir. 2017). So, when plaintiff's counsel agreed to take this case on, the legal issues presented something novel and, certainly, unsettled in our Circuit.

But the difficulty that the case's novelty may have presented were the parties to go to trial is not the difficulty the court is concerned with here. The court is concerned with the actual difficulty that counsel faced. And to answer that question, the court need look no further than the hours reported by counsel. Although the court already has found that the 188.3 hours reported is a reasonable and fair expenditure of time, it notes that those hours indicate that this case—which has been pending since February 2015—did not present such difficult questions as

8

to warrant any increase in attorney fees. Factor two, therefore, is neutral, at best, and neither favors nor disfavors approval of plaintiff's fee request.

### C. Factor Three: Skill Required to Perform Legal Service Properly

Although class actions are complicated endeavors, in general, the time required to prosecute this one shows that no more than ordinary skill was required to resolve this case. The court does not say that to slight counsel. Each represented the client's best interest and resolved the case as quickly as possible. Instead, the court makes this evaluation to explain why the case does not justify an award of attorney fees above the normal range. So, factor three, like factor two, is neutral at best.

### D. Factor Four: Preclusion of Other Work

Factor four "involves the dual consideration of otherwise available business which is foreclosed because of conflicts of interest which occur from the representation, and the fact that once the employment is undertaken the attorney is not free to use the time spent on the client's behalf for other purposes." *Johnson*, 488 F.2d at 718. Plaintiff's counsel contends that it "rejected the acceptance of other cases during this time frame due to the existing and expected demands of this litigation." Doc. 47 at 10. But this contention alone is not sufficient to guide the court's evaluation of factor four. Indeed, the relatively low number of hours—expended over more than two years—suggests that counsel was not detracted from representing other clients, and so would seem to counsel against approving plaintiff's fee request. Because the court does not have sufficient information to consider factor four properly, however, it declines to make such a finding. Instead, the court concludes that factor four is neutral and thus neither favors nor disfavors granting plaintiff's fee request.

9

### E. Factor Five: Customary Fee

In factor five, the court considers "[t]he customary fee for similar work in the community." *Johnson*, 488 F.2d at 718. In class action cases such as this one, the customary fee is a contingency arrangement based on a percentage of the common fund. *Ramah Navajo Chapter v. Babbitt*, 50 F. Supp. 2d 1091, 1104 (D.N.M. 1999). Here, plaintiff requests a fee award of 33% of the common fund. Courts in Kansas generally consider a 33% attorney fee request reasonable and customary in FCRA and similar cases. *See, e.g.*, *Barbosa*, 2015 WL 4920292, at *11 (concluding that a fee request that was 33% of the total settlement amount came within the range approved by our court and charged by counsel in other matters); Order Approving Settlement Agreement, *Barnwell v. Corrs. Corp. of Am.* (D. Kan. Feb. 12, 2009) (No. 08-2151-JWL-DJW), ECF No. 230 (approving award of 33% of gross settlement amount in FLSA action); *see also Bruner v. Sprint/United Mgmt. Co.*, Nos. 07-2164-KHV, 08-2133-KHV, 08-2149-KHV, 2009 WL 2058762, at *8 (D. Kan. July 14, 2009) (noting the same about a requested fee award that was 33% of the common fund, though ultimately finding the request unreasonable). This proportion matches a national trend. *See, e.g.*, *Stoner v. CBA Info. Servs.*, 352 F. Supp. 2d 549, 552–53 (E.D. Pa. 2005) (concluding that a 33% fee from a $772,500 settlement fund was reasonable where counsel devoted 560 hours to the FCRA case); Final Judgment and Order Approving Class Action Settlement, *Alame v. Norred & Assocs., Inc.*, (W.D. Mo. Aug. 28, 2015) (No. 13-04280-NKL), ECF No. 78 (approving attorneys' fees of 33% in FCRA case); *Barel v. Bank of Am.*, 255 F.R.D. 393, 404 (E.D. Pa. 2009) ("A review of cases from this District and Pennsylvania state courts reveals a range of fees as a percentage of recovery ranging from 5% to 40%."). Factor five thus favors a finding that plaintiff's fee request is reasonable.

### F. Factor Six: Whether the Fee is Fixed or Contingent

The court asks whether plaintiff agreed to a fixed or contingent fee because "the percentage of the recovery agreed to is helpful in demonstrating the attorney's fee expectations when he accepted the case," even though "[s]uch arrangements should not determine the court's decision." *Johnson*, 488 F.2d at 718 (quoting *Clark v. Am. Marine Corp.*, 320 F. Supp. 709, 711 (E.D. La. 1970)). Here, plaintiff and his counsel agreed to a contingency fee arrangement where plaintiff agreed to pay counsel 40% of any common-fund-settlement recovery. In the proposed settlement agreement, counsel voluntarily reduced its contingency fee request to 33%. Factor six thus favors a finding that plaintiff's fee request is reasonable.

### F. Factor Eight: Amount Involved and Results Obtained

"[A] decisive factor in this common fund class action case is the amount involved and the results obtained." *Brown*, 838 F.2d at 456. So, in cases where "the trial judge determines that the recovery was highly contingent and that the efforts of counsel were instrumental in realizing recovery on behalf of the class," the eighth *Johnson* factor "may be given greater weight" than the first, *i.e.* time and labor required. *Id.* at 456.

Although class member's recovery in this case—$26.77—is on the low-end for FCRA actions, it is still a favorable result. *See* Doc. 25 at 11–12 (discussing recovery in similar FCRA cases as having produced as much as $250 or $1,000 per claim). Each class member will receive a monetary settlement from the common fund despite the fact that defendant continues to contest its liability. Indeed, the law on the issues presented by this case is so unsettled that, even after the Ninth Circuit's recent holding in *Syed*, it is possible that class members would not have recovered anything without this settlement. The settlement thus avoids the uncertainty and rigors of trial and produces a favorable result for class members. Factor eight thus favors a finding that plaintiff's fee request is reasonable, albeit slightly.

### G. Factor Nine: Experience, Reputation, and Ability of the Attorneys

Plaintiff's counsel, Jason Brown and Jayson Watkins of Brown & Watkins, LLC, has a combined total of more than 14 years' experience litigating employment cases. Counsel are well-versed in FCRA law, having represented clients in several FCRA actions. *E.g.*, *Miller v. Quest Diagnostics*, 85 F. Supp. 3d 1058 (W.D. Mo. 2015); *Rawlings v. ADS Alliance Data Sys., Inc.*, No. 2:15-cv-04051-NKL, 2015 WL 3866885 (W.D. Mo. June 23, 2015). Mr. Brown and Mr. Watkins are experienced. They have handled class actions and served as class counsel for several employment-related actions and similar FCRA actions. *See, e.g.*, *Alame v. Norred & Assocs., Inc.*, (W.D. Mo. Aug. 8, 2015) (No. 2:13-cv-04280-NKL), ECF No. 78 (appointing Brown & Associates LLC as class counsel in a nearly identical FCRA class-action settlement); *Harris v. Pathways Cmty. Behavioral Healthcare, Inc.*, No. 10-0789-CV-W-SOW, 2012 WL 1906444, at *6 (W.D. Mo. May 25, 2012) (appointing Jason Brown as class counsel in a Fair Labor Standards Act case); *Busler v. Enersys Energy Prods., Inc.*, No. 09-00159-CV-W-FJG, 2009 WL 2998970, at *5 (W.D. Mo. Sept. 16, 2009) (same). Counsels' experience and ability, especially in the realm of FCRA and employment class actions, weighs in favor of finding plaintiff's fee request reasonable. Factor nine thus favors approving plaintiff's fee request.

### H. Factor Ten: Undesirability of the Case

For many of the same reasons that FCRA cases like this one present somewhat novel issues, they are also undesirable. As plaintiff explains in his Motion, "FCRA cases lack a substantial body of case law, many of the available decisions conflict with one another, and the Supreme Court's decision in *Spokeo* has greatly increased the risk of cases being dismissed and has increased litigation costs and resources needed to litigate a FCRA case." Doc. 47 at 12. The *Spokeo* case plaintiff refers to is *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). There, the Supreme Court held that a plaintiff "cannot satisfy the demands of Article III [standing] by

alleging a bare procedural violation" of the FCRA, in part, because "[a] violation of one of the FCRA's procedural requirements may result in no harm." 136 S. Ct. at 1550. Some attorneys have theorized that this holding may bring an "end to costly FCRA (and other statutory) class actions based on trivial violations of procedural requirements that don't harm anyone." Kevin M. McGinty & George Patterson, Mintz Levin, *Supreme Court's* Spokeo *Decision Strengthens Standing Defense for Employers in FCRA and Other Statutory Class Actions* (June 3, 2016), https://www.employmentmattersblog.com/2016/06/supreme-courts-spokeo-decision-strengthens-standing-defense-for-employers-in-fcra-and-other-statutory-class-actions/. Taking on FCRA cases today, then, is a risky endeavor. Because cases like this one appear less desirable than they once did, factor ten favors a finding that plaintiff's fee request is reasonable.

### I. Factor Twelve: Awards in Similar Cases

Plaintiff asserts that the requested fee award is consistent with awards approved in similar cases. As noted above, the requested fee award here represents 33% of the common fund. As the court explained in its discussion of factor five, a 33% fee is typical in FCRA cases like this one and other employment-related cases. *See supra* p. 10. Factor twelve favors a finding that plaintiff's fee request is reasonable.

### J. Result of the *Johnson* Factors

In light of the foregoing discussion, the court concludes that good reason exists to find plaintiff's fee request reasonable. Although many of the factors considered are neutral on the fee analysis, the factors weighing in favor of granting the request suffice. This would have been a difficult case to litigate through trial, making counsel's willingness to take it on at all, let alone on a contingency fee arrangement, worth rewarding. Also, the fee award plaintiff seeks is customary for the area and does not over compensate counsel for what appears to have been a drawn out case. Under the percentage-of-the-fund method, then, the court finds plaintiff's fee

request of 33% reasonable. Next, the court cross-checks this conclusion under the lodestar method also.

K. **Lodestar Cross-Check**

Because the court already has found that the time reported by counsel is reasonable, it need only address the second step of the lodestar analysis here. *See Barbosa*, 2015 WL 4920292, at *8. In this second step, the court must "determine what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time." *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1256 (10th Cir. 1998) (quoting *Ramos*, 713 F.2d at 555); *Barbosa*, 2015 WL 4920292, at *9. "The court should scrutinize [legal assistants'] hours and the suggested rates in the same manner it scrutinizes lawyer time and rates." *Case*, 157 F.3d at 1255 (quoting *Ramos*, 713 F.2d at 559). And, "the district court should base its hourly rate award on what the evidence shows the market commands for . . . analogous litigation." *Id.* (citing *Beard v. Teska*, 31 F.3d 942, 955–57 (10th Cir. 1994), *abrogated on other grounds by Buckhannon Bd. & Care Home, Inc. v. W. Va. Dept. of Health & Human Servs.*, 532 U.S. 598 (2001)).

In his Motion, plaintiff represents that Mr. Brown and Mr. Watkins spent a combined total of 171.6 hours working on this case, Mr. Burris spent 2.8 hours working on the case, and Ms. Graham, a legal assistant, spent 13.9 hours working on the case. Doc. 47-1 at 9. Plaintiff affixes a fixed rate of $350 to Mr. Burris's work, but provides three alternative rates for Mr. Brown and Mr. Watkins—$750, $550, and $350. *Id.* Plaintiff provides no explanation about Mr. Burris at all. And, plaintiff only provides minimal evidence to support a rate of $550 for Mr. Brown and Mr. Watkins. *See id.* at 4 ¶¶ 6, 8. First, plaintiff directs the court to another case where Mr. Brown and Mr. Watkins submitted their customary hourly rate of $750 and their reduced rate of $550. *Id.* at 4 ¶ 6; Doc. 47 at 6 n.2. But, the court's Order is not quite the

14

endorsement that plaintiff derives from it. Instead, the court record cited by plaintiff merely concludes that the fee application in the cited case was "fair, reasonable and adequate." *Powell v. NX Utilities*, LLC, Case No. 2:15-cv-09292-JWL-GEB (D. Kan Nov. 18, 2016) (Doc. 30). In short, the *Powell* finding does not explicitly endorse any of the rates advanced by plaintiff here.

Plaintiff next relies on the Laffey Matrix, which purportedly represents reasonable fees in the D.C.-Baltimore area. *See http://www.laffeymatrix.com/see.html* (visited Oct. 4, 2017). The Laffey Matrix assigns attorney fee rates by the attorney's year out of law school. Under this matrix, Mr. Watkin's hourly rate is $608 and Mr. Brown's hourly rate is $685. Whatever are the reasonable rates in Washington, D.C. and Baltimore, the court must determine the appropriate hourly rate for lodestar purposes by referring to "the prevailing market rates in the relevant community." *Wilkinson v. I.C. Sys., Inc.*, No. 09-2456-JAR, 2011 WL 5304150, at *3 (D. Kan. Nov. 1, 2011). In determining the prevailing market rate, the court may "use other relevant factors, including its own knowledge, to establish the rate." *Id.*

Counsels' rates are on the high end, and so they give the court pause. In 2015, our court found $325 to $425 an hour reasonable rates for attorneys with several years' experience to charge for handling an FLSA collective action case in the Kansas City area. *Barbosa*, 2015 WL 4920292, at *10. Just a few months ago, the court found $600 to $400 an hour reasonable rates for attorneys with several years' experience to charge for handling an FLSA collective action case in *Hoffman v. Poulsen Pizza LLC*., No. 15-2640-DDC-KGG, 2017 WL 25386, at *7 (D. Kan. Jan. 3, 2017). The court noted, however, that those rates were "on the high end" and were only justified by "the risks and other factors present in th[e] case" and an affidavit from a practicing attorney not associated with the case. *Id.* Plaintiff provides no such affidavit here and this case does not present facts similar enough to those in *Hoffman* for the court to rely on the same justifications. In light of these facts, and based on the analysis of the *Johnson* factors

15

above, the court finds an adjustment necessary.[2] Expecting that the rate for employment-related, class-action counsel has risen since 2015, the court concludes that $450 per hour is a reasonable—albeit high—rate for Mr. Brown and Mr. Watkins in actions such as this one.

But, plaintiff has provided no evidence about Mr. Burris's customary rate. In a FLSA case, this court has reduced collective-action attorneys' hourly rates from the asked-for $350 to $455 per hour to $168.58 per hour because "[plaintiff] provide[d] no evidence of the hourly rates which [plaintiff's counsel] customarily charged or the hourly rates which they have obtained in other fee award cases." *Gardner v. Sprint/United Mgmt. Co.*, No. 08-2559, 2009 WL 1917408, at *3 (D. Kan. July 2, 2009). Thus, on this sparse record, the court determines that $168.58 per hour is a reasonable rate for Mr. Burris.

As for the legal assistant rate, the court concludes that it is reasonable. In 2014, the District of Kansas Bankruptcy Court found that legal assistant rates of $75 per hour "compare[d] favorably to what attorneys in [the] area charged for work done outside bankruptcy." *In re Bowling*, No. 12-10635, 2014 WL 4290336, at *4 (Bankr. D. Kan. Aug. 28, 2014). In 2016, our court found that $125 per hour was a reasonable rate for a paralegal. *Mathiason v. Aquinas Home Health Care, Inc.*, 187 F. Supp. 3d 1269, 1281 (D. Kan. 2016); *see also Barbosa*, 2015 WL 4920292, at *10 (reducing Kansas City paralegals' hourly rate from $100 per hour to $75 per hour). The legal-assistant rate plaintiff seeks here, then, is $25 more than the going rate in 2014, but $25 less than the market rate for a paralegal in 2016. The requested rate is in the middle ground. The court thus finds that no adjustment is necessary. Expecting that the rate for a legal assistant has risen since 2014, the court concludes that $100 per hour is a reasonable—

---

[2] The court recognizes that plaintiff's counsel represent that they typically charge $750 per hour. Doc. 47 at 6 n.2. But, if $550 is too high, $750 surely is as well. And, "the relevant market value is not the price that the particular lawyer chosen may be paid by willing purchasers of his or her services, but rather the price that is customarily paid in the community for services like those involved in the case at hand." *Beard*, 31 F.3d at 956.

albeit high—rate for a legal assistant. *Cf. Paradigm Alliance, Inc. v. Celeritas Techs., LLC*, No. 07-1121-EFM, 2011 WL 251452, at *3, *5 (D. Kan. Jan. 25, 2011) (finding $60 to $95 per hour a reasonable rate for a legal assistant in Wichita, Kansas, and so reducing legal assistant's hourly rate from the asked-for $150 per hour to $95 per hour).

In light of these adjustments, the lodestar value in this case is $79,082.02. The percentage-fee value under the Settlement Agreement is $49,237.00. Plaintiff thus requests a fee award lower than the lodestar value. The court also recognizes that counsel will incur additional time to complete the settlement and conclude the litigation—time that counsel has not yet recorded and thus is not reflected in the lodestar. The lodestar will continue to increase as counsel performs this additional work, and it will exceed the requested award by an even greater amount. The court thus concludes plaintiff's requested fee award is reasonable under the lodestar method.

**L.     Conclusion**

Because the court finds plaintiff's fee request of 33% of the common fund reasonable under the percentage-of-the-fund method and the lodestar method confirms the fee's reasonableness, the court grants plaintiff's Motion for Attorney Fees and Costs.

**IT IS THEREFORE ORDERED THAT** the parties' Joint Motion for Order for Final Approval of Class Action Settlement (Doc. 46) is granted. Parties are directed to implement and consummate the Class Settlement according to the terms and provisions of the Agreement. The claims against defendants on behalf of the Settlement Class are dismissed with prejudice and without costs to any party, except as otherwise provided in this Order.

**IT IS FURTHER ORDERED THAT** plaintiff Bryan Bailes's Motion for Attorney Fees and Costs (Doc. 47) is granted as set forth in this Order.

**IT IS SO ORDERED.**

**Dated this 20th day of October, 2017, at Topeka, Kansas.**

                                                  **s/ Daniel D. Crabtree**
                                                  **Daniel D. Crabtree**
                                                  **United States District Judge**